Filed 5/9/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GERAWAN FARMING, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AGRICULTURAL LABOR RELATIONS BOARD et al., <br><br> Defendants and Respondents. | F069896 <br><br> (Super. Ct. No. 13CECG03374) |
| LUPE GARCIA, <br><br> Intervener and Appellant, <br><br> v. <br><br> AGRICULTURAL LABOR RELATIONS BOARD et al., <br><br> Defendant and Respondents. | F070287 <br><br> (Super. Ct. No. 13CECG03374) <br><br> **OPINION** |

        APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

---

[*]        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV., V. and VI.

Georgeson and Belardinelli, C. Russell Georgeson; Irell & Manella, David A. Schwarz, Bruce A. Wessel and Josh Geller for Plaintiff and Appellant.

Scott & Cyan Banister First Amendment Clinic, UCLA School of Law, Eugene Volokh for The Reporters Committee for Freedom of the Press, The First Amendment Coalition, and The California Newspaper Publishers' Association as Amici Curiae on behalf of Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, for Defendants and Respondents.

Walter & Wilhelm Law Group and Paul J. Bauer for Intervener and Appellant.

-ooOoo-

Pursuant to Labor Code section 1164 et seq., if an agricultural employer and a union certified to represent the agricultural employees of that employer have failed to reach an initial collective bargaining agreement (CBA), the Agricultural Labor Relations Board (the Board) may, if requested by one of the parties and certain statutory conditions are met, order them to undergo a binding process referred to in the statute as "mandatory mediation and conciliation" (MMC).[1] (§ 1164, subd. (a).) In the MMC process, after an initial 30-day period of voluntary mediation is exhausted, a decision-maker (the mediator) takes evidence and hears argument from the parties on all disputed issues (the "on the record" phase of the MMC process) and then submits a "report" to the Board stating the mediator's findings on what he or she believes the terms of the CBA should be. The grounds for the mediator's determinations must be stated in the report and supported by the factual record. (§ 1164, subd. (d).) When the report becomes the final

---

[1]     Unless otherwise indicated, all further statutory references are to the Labor Code. Section 1164 et seq. is often referred to herein as the MMC statute. The MMC statute is one chapter (i.e., ch. 6.5) of division 2, part 3.5, of the Labor Code, a comprehensive statutory framework entitled the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (Lab. Code, § 1140 et seq.; the ALRA).

2.

order of the Board, it establishes the terms of an imposed CBA to which the parties are bound.  (§ 1164.3, subds. (a)–(e).)

In this case, Lupe Garcia (Garcia), an employee of agricultural employer, Gerawan Farming, Inc. (Gerawan), requested the Board's permission to attend and peaceably observe the MMC process that had been ordered between Gerawan and United Farm Workers (UFW).  Specifically, Garcia wished to observe the on-the-record phase of the MMC process, where evidence and argument would be presented by the parties to the mediator on all disputed issues.  In his request to the Board, Garcia argued that he and other members of the public had a constitutional right of access to the on-the-record portion of the MMC process.  The Board rejected Garcia's request and proceeded to issue a broad policy decision that members of the public have no right to attend MMC proceedings.  (See *Gerawan Farming, Inc. v. United Farm Workers of America* (Aug. 21, 2013) 39 ALRB No. 13.)[2]

In response to the Board's no-public-access ruling, Gerawan filed a declaratory relief action in the trial court, seeking a judicial declaration that the Board's ruling violated a right of public access protected under both the federal and state Constitutions. Garcia intervened in the same action and filed a similar pleading in the form of a complaint-in-intervention.  The Board demurred to both complaints on the ground that the trial court lacked jurisdiction because section 1164.9 limited all judicial review of the Board's rulings in such cases to the Court of Appeal or Supreme Court.  The trial court agreed with the Board and sustained the demurrers without leave to amend.  Gerawan and Garcia have separately appealed from the resulting judgments[3] of dismissal, arguing that (1) section 1164.9 did not preclude the trial court from exercising jurisdiction because

---

[2]    We have generally referred to this ruling in 39 ALRB No. 13 as the Board's "no-public-access" ruling or policy.

[3]    Separate judgments were entered by the trial court against Gerawan and Garcia, respectively, and thus we use the plural.

3.

that section is unconstitutional and (2) the Board's no-public-access policy violates a right of public access to civil proceedings protected under the federal or state Constitution, or both.[4]

We agree with Gerawan and Garcia on the first point, and we remand the action to the trial court on the second. As to section 1164.9, we hold that its absolute preclusion of superior court jurisdiction, even in exceptional circumstances where (as with Garcia) the sole statutory mechanism for judicial review was unavailable and constitutional rights were assertedly at stake, impermissibly divested the superior court of its original jurisdiction without an adequate constitutional foundation for doing so. Therefore, section 1164.9 is unconstitutional.

It follows that the judgments of dismissal must be reversed. The trial court had jurisdiction to reach the constitutional issues raised in the several causes of action. Accordingly, we will reverse and remand the case back to the trial court for further proceedings consistent with this opinion.[5]

## FACTS AND PROCEDURAL HISTORY

Gerawan is a family owned farming business based in the Fresno area that grows, harvests and packs stone fruit and table grapes. It provides employment to several thousand agricultural employees. In 1992, following a contested run-off election, the UFW was certified by the Board as the exclusive bargaining representative of Gerawan's

---

[4] Garcia filed a separate appeal in case No. F070287. Because the appeals by Gerawan and Garcia are virtually identical as to the issues raised, we have ordered the two appeals consolidated for purposes of this opinion.

[5] Our resolution of the discrete issue of section 1164.9's invalidity should not affect the related case before the California Supreme Court addressing other aspects of the MMC statute. (See *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd*., review granted Aug. 19, 2015, S227243.) In that case, the issues being considered by the court are whether the MMC statute unconstitutionally violates equal protection principles or improperly delegates legislative power, as well as whether an employer may raise the defense of union abandonment.

4.

agricultural employees. Although some initial bargaining discussions took place at that time, Gerawan and UFW never entered into a CBA.

After an absence of contact for nearly two decades, UFW reappeared in late 2012 and demanded a resumption of negotiations with Gerawan. In early 2013, following several bargaining sessions with Gerawan, UFW filed a request to the Board to have the parties ordered into the MMC process pursuant to section 1164 et seq. On April 16, 2013, the Board granted UFW's request and ordered Gerawan and UFW to commence the MMC process. A mediator, Matthew Goldberg, was appointed in May 2013.

On June 10, 2013, Garcia, a longtime agricultural employee of Gerawan, appeared at an early MMC meeting (along with other Gerawan employees) and asked the mediator for permission to intervene and participate in the proceedings. At that point in time, the initial voluntary mediation phase of the MMC process had not yet been exhausted. Gerawan supported the idea of allowing employee participation, but UFW did not. The mediator denied Garcia's request, explaining that the mediation proceedings were confidential and that he (Garcia) was not a party to those proceedings.

On July 10, 2013, Garcia filed a petition with the Board as an alleged interested party, seeking the Board's permission to formally intervene and participate in the MMC process. Garcia wanted to participate as an intervening party because the proceedings would likely impact terms and conditions of his employment. He believed that UFW had abandoned him, did not represent him and could not adequately represent his interests. Gerawan filed points and authorities supporting Garcia's petition to intervene. Among other things, Gerawan argued that employees (such as Garcia) and other members of the public were entitled to attend the on-the-record phase of the MMC process based on a qualified First Amendment right-of-access. On July 29, 2013, the Board denied Garcia's petition to intervene. The Board declined to reach Gerawan's public access argument because Gerawan allegedly did not have standing to raise Garcia's rights, and Garcia's petition had not raised the argument.

On August 2, 2013, Garcia filed a modified request to the Board, asking for permission to simply attend and quietly observe the on-the-record portion of the MMC process. This time, the request was expressly based on an asserted constitutionally protected right of public access to such proceedings. On August 21, 2013, the Board denied Garcia's access request. The Board stated it was willing to address the issue because of its importance: "[T]he issue raised by Garcia—whether Garcia and the public have a right of public access to MMC proceedings under the federal and state constitutions—presents an issue of first impression which, if left unresolved, could potentially result in the deprivation of constitutionally protected rights." The Board discussed the relevant Supreme Court and other precedents and held that the MMC process was distinguishable from civil trials or civil proceedings in which the public has a right of access. The Board reasoned that the MMC process is "more akin to a labor contract negotiation," and expressed that it could "not see how public access would play a significant positive role in the functioning of MMC or any type of labor contract negotiation for that matter." Therefore, the Board concluded that there was no First Amendment right of access to the Board's "quasi-legislative proceeding known as MMC." The Board also ruled that the public had no right of access to MMC proceedings under the California Constitution.

Gerawan filed its complaint for declaratory relief in Fresno County Superior Court on October 28, 2013. Gerawan's complaint sought a judicial declaration that the Board's no-public-access ruling violated the federal and state Constitutions by denying to members of the public and the press a right of access to the on-the-record phase of the MMC process. Gerawan's complaint also sought damages, attorney fees and injunctive relief under title 42 United States Code section 1983 (42 U.S.C. section 1983) against individual Board members or officials, premised on the alleged violation of access rights under the federal Constitution.

6.

On December 23, 2013, Garcia filed a motion to intervene in the action in order to file a proposed complaint-in-intervention. On February 11, 2014, the trial court granted Garcia's motion. Garcia's complaint-in-intervention was filed on April 1, 2014. Like Gerawan's complaint, Garcia's complaint-in-intervention sought declaratory relief that the Board's no-public-access ruling violated federal and state constitutional protections of a right of public access to such proceedings. Garcia also sought damages, attorney fees and injunctive relief under 42 U.S.C. section 1983 against individual Board members.

The Board demurred to both the complaint and complaint-in-intervention, arguing primarily that the trial court lacked jurisdiction to hear any challenge to the Board's rulings or decisions, based on section 1164.9. In relevant part, that section provides: "*No court of this state, except the court of appeal or the Supreme Court, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the board ….*" (Italics added.) The Board also argued that even if section 1164.9 did not divest the trial court of jurisdiction, no cause of action under 42 U.S.C. section 1983 was available against the individual Board members. Additionally, in its demurrer to Garcia's complaint-in-intervention, the Board argued that Garcia's pleading was untimely under the 30-day deadline for seeking judicial review set forth in section 1164.5, and also that declaratory relief was not a proper means for challenging the Board's rulings.

A hearing on the demurrer to Gerawan's complaint was held on March 13, 2014. The trial court's tentative ruling was to sustain the demurrer without leave to amend because of the jurisdictional bar of section 1164.9, and also because (as to the cause of action under 42 U.S.C. section 1983) immunity defenses would shield the individual Board members or officials. Following the hearing, the trial court took the matter under submission and also allowed additional letter briefs to be submitted. On May 15, 2014, the trial court issued an order affirming its tentative ruling to sustain the demurrer without leave to amend, stating that "section 1164.9 is dispositive in this matter and is not an

7.

unconstitutional interference with the trial court's original jurisdiction." A judgment of dismissal was entered against Gerawan on June 6, 2014.

A hearing was held on the Board's demurrer to Garcia's complaint-in-intervention on June 4, 2014. By order issued on July 7, 2014, the court's tentative ruling was adopted as the court's order. The trial court sustained the demurrer without leave to amend, based on the jurisdictional bar of section 1164.9. Additionally, the demurrer was sustained based on Garcia's failure to seek judicial review within the 30-day deadline of section 1164.5, and because the 42 U.S.C. section 1983 cause of action was not available against individual Board members or officials sued in their official capacities. A judgment of dismissal was entered against Garcia on July 25, 2014.

Gerawan and Garcia timely filed their separate appeals, raising substantially the same issues. We ordered the two appeals consolidated for purposes of this opinion.

**DISCUSSION**

## I.     Standard of Review

On appeal from a judgment dismissing an action after sustaining a demurrer, we review de novo whether the complaint states facts sufficient to constitute a cause of action. (*McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415.) Where a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

An issue of statutory interpretation is reviewed de novo (*People ex rel. Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 432), as is the issue of whether a statute is constitutional (*People v. Superior Court* (*Mudge*) (1997) 54 Cal.App.4th 407, 411). On the latter question, "'We do not consider or weigh the economic or social wisdom or general propriety'" of the challenged statute; but rather, "'our sole function is to evaluate [it] legally in the light of established constitutional standards.'" (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 814.) We do so while also recognizing that

8.

"'[s]tatutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.'" (*Ibid*.)

## II.    Judicial Review Provisions of MMC Statute

As alluded to above, if the parties to the MMC process are unable to enter a CBA during the initial 30-day voluntary mediation, the mediator certifies that "the mediation process has been exhausted." (§ 1164, subd. (c).) At that point, the on-the-record phase of the MMC process commences, in which evidence is received and an official record is maintained: "Within 21 days, the mediator shall file a report with the board that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement …. [T]he report shall include the basis for the mediator's determination. The mediator's determination shall be supported by the record." (§ 1164, subd. (d); see Cal. Code of Regs., tit. 8, § 20407, subds. (c) & (d).) Within seven days of the filing of the report by the mediator, either party may petition the Board for review of the report. Subject to any relief granted in the Board's review, the report becomes the final order of the Board. (§ 1164.3.)

Judicial review of a final order of the Board in the MMC process is described in sections 1164.5, 1164.7 and 1164.9. Section 1164.5, subdivision (a), states that "[w]ithin 30 days after the order of the board takes effect, a party may petition for a writ of review in the court of appeal or the California Supreme Court." The same section provides that such review by the Court of Appeal or the Supreme Court is limited to (or "shall not extend further than") certain grounds, including whether (1) the Board acted in excess of its jurisdiction, (2) the Board has not proceeded in a manner required by law, and (3) the order or decision of the Board violated any right of the petitioner under the state or federal Constitution. (§ 1164.5, subd. (b).) Section 1164.7, subdivision (a), states that "[t]he board and each party to the action or proceeding before the mediator" may appear in such a review proceeding in the Court of Appeal or Supreme Court. Upon the review

9.

hearing taking place, "the court of appeal or the Supreme Court shall enter judgment either affirming or setting aside the order of the board." (*Ibid.*)

Finally, section 1164.9 sets forth the following jurisdictional restriction on the judicial review process: "No court of this state, except the court of appeal or the Supreme Court, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the board [or] to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the board in the performance of its official duties, as provided by law and the rules of court."

## III.    Section 1164.9 is Unconstitutional

Based on the plain terms of section 1164.9, the trial court sustained the demurrer on the ground that it had no jurisdiction over the causes of action challenging the Board's no-public-access ruling. In the present appeal, Gerawan and Garcia argue the trial court erred because section 1164.9 is invalid in that it unconstitutionally divests the superior court of original jurisdiction. For the reasons set forth below, we agree.

### A.    Framing the Constitutional Issue

Article VI, section 10 of the California Constitution provides that "[t]he Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings" and "in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition." "Superior courts have original jurisdiction in all other causes." (*Ibid.*) Because original jurisdiction has been vested in these courts by the California Constitution, the Legislature is not free to defeat or impair that jurisdiction. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 252–253; *Chinn v. Superior Court* (1909) 156 Cal. 478, 480 ["where the judicial power of courts, either original or appellate, is fixed by constitutional provisions, the legislature cannot either limit or extend that jurisdiction"].) Nevertheless, statutes barring judicial review of certain administrative decisions except in the courts of appeal and/or Supreme Court have been upheld, but only where the Legislature's authority to enact such laws was found to

10.

be expressly or impliedly granted by other constitutional provisions. (*County of Sonoma v. State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 369–370 (*County of Sonoma*).)

Here, section 1164.9 patently seeks to eliminate all superior court jurisdiction to review the Board's rulings or decisions in connection with the MMC process, even while it exclusively confines such review to the Court of Appeal or the Supreme Court. Does section 1164.9 unconstitutionally divest the superior court of its original jurisdiction granted under article VI, section 10 of the California Constitution? As already noted, the answer to that question depends on whether there is any other constitutional provision that would expressly or impliedly grant to the Legislature the power to divest the superior court of its original jurisdiction in such matters.

B.     The Precedents Establish Our Approach

Although the approach we follow is articulated in the preceding sentence, we have not yet explained why we believe it represents the correct legal standard for analyzing the constitutional issue before us. That is our present task, which is made simpler by the fact that the wording of section 1164.9 is not unique and the question of how to resolve the constitutional issue before us is not new. On several prior occasions, the Legislature has enacted statutes virtually identical to section 1164.9.[6] Indeed, it seems certain that section 1164.9 was modeled after these prior statutes. Because these prior enactments were challenged on the same constitutional ground as here, a number of relevant precedents exist (including opinions of the California Supreme Court) that highlight the correct legal test to be applied. We now examine these key precedents.

In *Pacific Telephone etc. Co. v. Eshleman* (1913) 166 Cal. 640 (*Eshleman*), the Supreme Court addressed the constitutionality of a statute that conferred exclusive

---

[6]     See, e.g., Labor Code section 5955, Public Utilities Code section 1759 (formerly § 67 of the Public Utilities Act), and Business and Professions Code section 23090.5, each of which contain substantially the same wording as Labor Code section 1164.9.

11.

jurisdiction on the Supreme Court to review the decisions of the Railroad Commission. The statute under consideration was section 67 of the former Public Utilities Act,[7] which section stated in relevant part that "'[n]o court of this state (except the supreme court to the extent herein specified) shall have jurisdiction to reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties.'" (*Eshleman*, *supra*, at p. 649.) As in our present appeal, the petitioner in *Eshleman* argued that by conferring exclusive jurisdiction on the Supreme Court, the Legislature violated the Constitution by impairing the original jurisdiction of the superior court. (*Ibid*.) The Supreme Court declared it was a fact "which cannot be blinked [at] and must be faced" that "the legislature has with deliberation restricted and curtailed the jurisdiction vested in the superior courts of this state by the constitution. *And upon this but one thing can be said. If there be not in the constitution itself warrant and power to the legislature to do this thing, its effort must be declared illegal.*" (*Id*. at p. 652, italics added.) As will be seen, this rule pronounced by the Supreme Court in *Eshleman* established the basic test to be applied in such cases.

In ascertaining whether any provision of the Constitution would permit the Legislature to divest the superior court of jurisdiction to review Railroad Commission decisions, *Eshleman* examined the provisions of former article XII, sections 22 and 23 of the California Constitution, which had established and empowered a Railroad

---

**7**    With minor modifications, this jurisdictional statute is now codified in Public Utilities Code section 1759. (See *Hickey v. Roby* (1969) 273 Cal.App.2d 752, 763–764.) Section 1759, subdivision (a), of the Public Utilities Code states: "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court." Subdivision (b) of Public Utilities Code section 1759 states: "The writ of mandamus shall lie from the Supreme Court and from the court of appeal to the commission in all proper cases as prescribed in Section 1085 of the Code of Civil Procedure."

Commission.[8] (*Eshleman*, *supra*, 166 Cal. at pp. 652–654.) We briefly reiterate the relevant constitutional provisions considered by the court. Under former article XII, section 22, of the California Constitution, the Railroad Commission was granted power to establish rates charged by railroads and other transportation companies, to hear and determine complaints, administer oaths, subpoena witnesses, examine records, take testimony and punish for contempt in the same manner as courts of record. (Cal. Const., reprinted at vol. 3, Deering Ann. Cal. Codes (1974 ed.) at pp. 201–202 [former Cal. Const., art. XII, § 22, as amended in 1911].) Former article XII, section 22, further provided: "'No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the railroad commission in this constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this constitution.'" (*Eshleman*, *supra*, 166 Cal. at p. 653.) Additionally, as summarized by the court in *Eshleman*: "Section 23 of the same article defined 'public utilities' and brought all such utilities under the control of the railroad commission. Section 23 then declared: 'The railroad commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the state of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the legislature, and the right of the legislature to confer powers upon the railroad commission respecting public

---

[8] Under subsequent amendments to article XII of the California Constitution, the Railroad Commission became the present Public Utilities Commission (PUC). (See Cal. Const., art. XII, §§ 1–9.) The current article XII, section 5, states the Legislature's authority more succinctly than the earlier versions, as follows: "The Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the commission, to establish the manner and scope of review of commission action in a court of record, and to enable it to fix just compensation for utility property taken by eminent domain."

utilities is hereby declared to be plenary and to be unlimited by any provision of this constitution.'" (*Eshleman*, *supra*, at p. 653.)

Based on the above constitutional provisions, which not only created the Railroad Commission with broadly defined powers to regulate railroads, but also expressly granted to the Legislature a "'plenary'" authority to confer other powers on the commission "'*unlimited by any provision of this constitution*'" (*Eshleman*, *supra*, 166 Cal. at p. 653, italics added), *Eshleman* concluded that there was constitutional authority for the Legislature to restrict the superior court's jurisdiction (*id.* at pp. 658–660). In other words, no infringement was found of the constitutional grant of original jurisdiction to the superior courts because other constitutional language gave the Legislature plenary authority to add to the powers expressly conferred on the commission unhindered by any other provisions of the California Constitution. (See *Pickens v. Johnson* (1954) 42 Cal.2d 399, 404 [citing *Eshleman* for proposition that "The [PUC] has been established under a constitutional enabling act with full power conferred on the Legislature to enact legislation even contrary to any other provisions of the Constitution provided it be cognate and germane to the regulation and control of public utilities."].)

In *Loustalot v. Superior Court* (1947) 30 Cal.2d 905 (*Loustalot*), the Supreme Court reviewed the constitutionality of a statute permitting only appellate courts to review the rulings of the Industrial Accident Commission founded under former article XX, section 21 of the California Constitution (now art. XIV, § 4 [workers' compensation system].) The subject statute, former section 5955, stated in relevant part as follows: "'No court of this State, except the supreme court and the district courts of appeal to the extent herein specified, has jurisdiction to review, reverse, correct, or annul any order, rule, decision, or award of the commission, or to suspend or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the commission in

14.

the performance of its duties.…'" (*Loustalot*, *supra*, at p. 910, italics omitted.)[9] Preliminarily, the Supreme Court noted it was "without question" that Labor Code section 5955 was modeled after section 67 of the Public Utilities Act upheld in *Eshleman* and, therefore, "the decisions interpreting section 67" would apply, including *Eshleman* and its progeny. (*Loustalot*, *supra*, at p. 911.)

In concluding the Legislature had authority to enact section 5955, the court in *Loustalot* emphasized that former article XX, section 21 of the California Constitution expressly conferred "plenary power of the Legislature to control the review of Industrial Accident Commission decisions subject to the condition that decisions may be reviewed by the appellate courts." (*Loustalot*, *supra*, 30 Cal.2d at p. 911.) That constitutional provision gave plenary power to the Legislature that was "'*unlimited by any provisions of this constitution*'" to create and enforce "'a complete system of workmen's compensation,'" including the creation of a tribunal vested with the requisite governmental functions to determine any dispute or matter arising under such legislation "'*expeditiously*, inexpensively, *and without encumbrance of any character*.…'" (*Id*. at p. 912.) The only limitation in article XX, section 21 on the Legislature's power with respect to the tribunal in question was "the provision for review of its decisions by this court and the District Courts of Appeal." (*Loustalot*, *supra*, at p. 912.) Thus, "[i]n restricting any interference with the commission's decisions or orders to proceedings in the appellate courts, the Legislature has carried out the declared policy of the constitutional provision that the commission be unencumbered by any but proceedings in the appellate courts." (*Id*. at pp. 912–913.)

---

[9] The current section 5955 refers to the "appeals board" rather than the commission, but is otherwise substantially the same. Section 5955 states: "No court of this state, except the Supreme Court and the courts of appeal to the extent herein specified, has jurisdiction to review, reverse, correct, or annul any order, rule, decision, or award of the appeals board, or to suspend or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the appeals board in the performance of its duties but a writ of mandate shall lie from the Supreme Court or a court of appeal in all proper cases."

Similarly, in *Dept. of Alcoholic Bev. Control v. Superior Court* (1968) 268 Cal.App.2d 67 (*Dept. of Alcoholic Bev. Control*), the Court of Appeal considered the constitutionality of a statute that restricts judicial review of decisions of the Department of Alcoholic Beverage Control to the appellate courts. The statute in question, Business and Professions Code section 23090.5, states as follows: "'No court of this state, except the Supreme Court and the courts of appeal to the extent specified in this article,[10] shall have jurisdiction to review, affirm, reverse, correct, or annul any order, rule, or decision of the department or to suspend, stay[,] or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the department in the performance of its duties, but a writ of mandate shall lie from the Supreme Court or the courts of appeal in any proper case.'" (*Dept. of Alcoholic Bev. Control*, *supra*, at p. 69.) The court observed that Business and Professions Code section 23090.5 was plainly "modeled after section 5955 of the Labor Code, which in turn was modeled after section 67 of the Public Utilities Act of 1911 [now section 1759 of the Public Utilities Code]." (*Dept. of Alcoholic Bev. Control*, *supra*, at p. 70.)

The issue presented in *Dept. of Alcoholic Bev. Control* was whether the law's denial of superior court jurisdiction to review the department's decisions was authorized by article XX, section 22 of the California Constitution, the provisions addressing the state's regulation of alcoholic beverages. Among other things, article XX, section 22 expressly establishes and empowers the Department of Alcoholic Beverage Control, creates an appeals board, and grants to the Legislature broad powers over the implementation of the matters explicitly provided therein. (Cal. Const., art. XX, § 22.) In its consideration of the issue before it, the court found it significant that the powers conferred upon the Legislature in article XX, section 22 were "*comprehensive*" in

---

**10** Section 23090.5 is a part of article 5, division 9, chapter 1.5 of the Business and Professions Code, which contains the judicial review provisions relating to the decisions of the department made by the Alcoholic Beverage Control Appeals Board.

character (*Dept. of Alcoholic Bev. Control*, *supra*, 268 Cal.App.2d at p. 73, italics added), as indicated by the following summary: "The first paragraph of section 22 provides that the state, and hence the Legislature, 'shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages within the State …' subject to the limitations therein provided. The second paragraph provides that '[all] alcoholic beverages may be bought, sold, served, consumed and otherwise disposed of in premises which shall be licensed as provided by the Legislature' and authorizes the Legislature to provide for the issuance of licenses to certain types of premises. The fifth paragraph provides that the Department 'shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature' to license the manufacture, importation and sale of alcoholic beverages in this state. The seventh paragraph relating to appeals to the Board from a decision of the Department provides that 'the board shall review the decision subject to such limitations as may be imposed by the Legislature,' prescribes the 'scope of review' by the Board, and concludes with the sentence: 'Orders of the board shall be subject to judicial review upon petition of the director or any party aggrieved by such order.' The thirteenth paragraph provides that '[all] constitutional provisions and laws inconsistent' with the section are repealed and the fourteenth paragraph that the provisions of the section are self-executing, 'but nothing herein shall prohibit the Legislature from enacting laws implementing and not inconsistent' with the section." (*Id*. at pp. 73–74.)

In light of such comprehensive powers conferred on the Legislature in article XX, section 22 of the California Constitution, which included the express power to enact laws to implement the provisions of section 22 in a manner not inconsistent therewith, the court concluded that the Legislature had authority to enact Business and Professions Code section 23090.5. (*Dept. of Alcoholic Bev. Control*, *supra*, 268 Cal.App.2d at pp. 72–75.) The court explained: "While article XX, section 22, provides that 'orders of the board shall be subject to judicial review upon petition of the director or any party

17.

aggrieved,' it does not specify the court in which review is to be obtained nor the procedure therefor. The enactment of the amendments in question[, i.e., Business and Professions Code section 23090.5,] merely constitutes a reasonable exercise of the express legislative authority to implement or carry out the constitutional provision." (*Id.* at pp. 74–75.)

Finally, in *County of Sonoma*, the county challenged the constitutionality of former Public Resources Code section 25531,[11] which confined judicial review of a narrow class of Energy Commission decisions to the Supreme Court. The issue raised by the county was whether the statute infringed on the original jurisdiction of the superior courts granted by article VI, section 10 of the California Constitution. (*County of Sonoma*, *supra*, 40 Cal.3d at p. 367.) The Supreme Court noted that former Public Resources Code section 25531 was a means of implementing and facilitating the PUC's licensing of thermoelectric power facilities in cases in which an Energy Commission certificate was required as a prerequisite to PUC approval. (*County of Sonoma*, *supra*, at pp. 364–366, 371.) Because of this "close relationship between the functions of the PUC and the narrow class of Energy Commission decisions affected by [former Public Resources Code] section 25531," the Supreme Court held that the section's judicial review provisions came "within the broad legislative authority over PUC matters conferred by article XII" of the California Constitution. (*County of Sonoma*, *supra*, at p. 367.) In so holding, the Supreme Court emphasized the broad plenary authority granted in article XII, which provides in section 5 that "'[t]he Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the [PUC and] to establish the

---

[11]     In relevant part, former Public Resources Code section 25531, subdivision (a), provided that certain Energy Commission decisions "'shall be subject to judicial review in the same manner as the decisions of the [PUC] ....'" (*County of Sonoma*, *supra*, 40 Cal.3d at p. 366, fn. 6.)

manner and scope of review of commission action in a court of record ….'" (*County of Sonoma*, *supra*, at p. 367.) Although article XII referred only to the PUC and not to the Energy Commission, the Supreme Court found "[e]specially pertinent" the "decisions which hold that statutes confining judicial review of administrative decisions to the appellate courts are within legislative powers *implied*, but not specified, by the Constitution." (*County of Sonoma*, *supra*, at pp. 369–370, italics added, citing *Loustalot*, *supra*, 30 Cal.2d at pp. 912–913 & *Dept. of Alcoholic Bev. Control*, *supra*, 268 Cal.App.2d at p. 74, among other cases.) In light of the strong presumption of the constitutionality of legislative acts and the close relationship between the PUC and the narrow class of Energy Commission decisions at issue in the statute, the Supreme Court concluded that "the Legislature's power to enact the judicial review provisions of [former Public Resources Code] section 25531 is implied by the comprehensive authority given the Legislature by article XII over the operations of the PUC." (*County of Sonoma*, *supra*, at p. 370.)[12]

Conspicuously running through the above cases is a common test or standard that was applied to determine the constitutionality of the enactment at issue. Each decision upholding a statutory elimination of the superior court's original jurisdiction to review certain administrative decisions was premised explicitly on provisions in the Constitution empowering the Legislature to enact the statute in question. In other words, a statute that divests the superior court of its original jurisdiction granted under article VI, section 10 of the California Constitution will be upheld only if the authority to enact such a law is expressly or impliedly conferred on the Legislature by other constitutional provisions.

---

[12] A dissenting opinion by Justice Mosk, with whom Justice Lucas concurred, disagreed with this conclusion because there was no language in the Constitution referring to the Energy Commission by name upon which to premise the restriction on superior court jurisdiction. (*County of Sonoma*, *supra*, 40 Cal.3d at p. 373 (dis. opn. of Mosk, J.).) The majority opinion and the dissenting opinion did not disagree on the test to be applied, but only on the question of whether it was satisfied.

19.

As the above summary of the case law demonstrates, this approach is well established by longstanding precedent, including decisions of the Supreme Court beginning with *Eshleman*. Thus, we are required to follow and apply that same approach here.

### C. No Constitutional Basis to Divest Court of Jurisdiction

Applying the approach necessitated by the above authorities to the present case, we are presented with the following question: Is there any provision in the California Constitution empowering the Legislature to eliminate the superior court's original jurisdiction to review the Board's decisions relating to MMC matters? The Board claims that article XIV, section 1, of the California Constitution supplies what is needed. That provision states: "The Legislature may provide for minimum wages and for the general welfare of employees and for those purposes may confer on a commission legislative, executive, and judicial powers." We cannot agree with the Board's position. There is nothing in article XIV, section 1, to even arguably indicate the Legislature was granted power to divest the superior court of jurisdiction to review decisions of the Board. While that provision does authorize the Legislature to create a commission and to grant judicial and other governmental functions to it, the ability to create a commission and endow it with certain functions does not imply the power to eliminate the superior courts' original jurisdiction concerning the Board's decisions.

Nor do the relevant precedents assist the Board's effort to salvage section 1164.9. Unlike the constitutional provisions in the *Eshleman* and *Loustalot* cases, article XIV, section 1 of the California Constitution does not expressly confer upon the Legislature plenary power unlimited by other provisions in the Constitution. Unlike the *County of Sonoma* case, here there is no basis to conclude that the subject matter of the Board's decisions would come within the broad constitutional authority to restrict judicial review of *another* entity's (e.g., the PUC's) decisions. Finally, unlike the unique situation in the *Dept. of Alcoholic Bev.Control* case, here there is no comparable and similarly comprehensive constitutional scheme in place from which a power to restrict judicial

20.

review might reasonably be implied from the express provisions. (*Dept. of Alcoholic Bev. Control*, *supra*, 268 Cal.App.2d at p. 73.) In that case, the constitutional provision at issue (1) conferred extensive and detailed powers upon the Legislature over all aspects of the subject matter being regulated (i.e., alcoholic beverages in the state), (2) established an agency with broadly stated regulatory powers, including the creation of an appeals board and a requirement of some form of judicial review, and (3) explicitly gave to the Legislature power to implement such provisions in any manner not inconsistent therewith. (*Id*. at pp. 73–74.) Nothing close to that exists here.

Although the Board argues that article XIV, section 1 of the California Constitution is comprehensive, we disagree that the legislative power conferred in that provision reasonably extends to the elimination of superior court jurisdiction to review Board decisions, which is what section 1164.9 clearly purports to do. Article XIV, section 1 makes no mention of judicial review and provides no hint that the Legislature was being empowered to negate or impair what the Constitution elsewhere ordains on that subject. As we have labored to explain herein, article XIV, section 1 simply describes a general grant of authority to create and empower a commission such as the Board; it reveals no basis for finding an implied power to enact laws defeating the superior court's original jurisdiction.

We would add that, if mere constitutional permission to create and empower a board or commission to exercise certain adjudicative or other governmental functions in a particular regulatory field were enough, by itself, to allow a finding that implied power was granted to the Legislature to disregard the *express* grant of original jurisdiction to superior courts, virtually any claim of implied power might be similarly rationalized as a means of trumping express constitutional provisions in such administrative contexts. Since we have a written Constitution, we cannot countenance such an easy-come, easy-go approach to its express provisions. Rather, we follow (as we must) the longstanding rule announced by the California Supreme Court in *Eshleman* that says: "If there be not *in the*

21.

*constitution itself warrant and power to the legislature to do this thing*, its effort must be declared illegal." (*Eshleman*, *supra*, 166 Cal. at p. 652, italics added.)

Based on all of the foregoing discussion, we conclude that section 1164.9 is unconstitutional because it divests the superior court of its original jurisdiction granted under article VI, section 10 of the California Constitution without any constitutional warrant for doing so.

D.  Comparison to Section 1160.8

One final issue must be put to rest in our analysis of section 1164.9. In its order sustaining the demurrer to Gerawan's complaint, the trial court reasoned that section 1164.9 must be constitutional because a similar statute in the ALRA (i.e., § 1160.8) was found to be constitutional by the California Supreme Court in the case of *Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd*. (1979) 24 Cal.3d 335 (*Tex-Cal*). In the present appeal, the Board similarly suggests that since section 1160.8 is constitutional, so too is section 1164.9. We reject the reasoning of the trial court and the Board on this issue because sections 1160.8 and 1164.9 are not parallel statutes; they are materially distinguishable provisions. While section 1160.8 initially directs or channels judicial review of the Board's unlawful labor practice decisions to the appellate courts, it does not purport to strip the superior court of jurisdiction. On the other hand, section 1164.9 (which begins with the imperative command "[n]o court of this state") on its face has but one objective: to eliminate superior court jurisdiction with respect to the matters described therein. In light of these basic differences between the two statutes, it should come as no surprise that the *Tex-Cal* decision (approving § 1160.8), when properly understood, does *not* indicate that section 1164.9 is constitutional. We proceed to explain.

In relevant part, section 1160.8 provides that in unfair labor practice matters, "[a]ny person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeal having

22.

jurisdiction over the county wherein the unfair labor practice in question was alleged to have been engaged in, … by filing in such court a written petition requesting that the order of the board be modified or set aside." The same section provides that the Court of Appeal reviewing the matter may "enter a decree enforcing, modifying, … or setting aside in whole or in part, the order of the board," and adds that "[t]he findings of the board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall … be conclusive."

In *Tex-Cal*, the Supreme Court considered several constitutional issues relating to the original jurisdiction of appellate courts. The issues arose because section 1160.8 provides for "initial review of board orders by an appellate rather than a superior court" (*Tex-Cal*, *supra*, 24 Cal.3d at p. 342), imposes a standard of review on the appellate court reviewing the Board's factual findings and authorizes the appellate court to enforce the Board's order to the extent it is affirmed (*id*. at p. 347). After resolving the standard of review issue,[13] the Supreme Court turned to the question of whether section 1160.8 impermissibly conferred jurisdiction on the appellate courts greater than that which was granted under article VI, sections 10 and 11 of the California Constitution. The rule to be applied was that "[t]he Legislature may not give to courts a jurisdiction beyond that conferred or authorized by the Constitution. [Citation.]" (*Tex-Cal*, *supra*, at p. 347.) After reciting the text of article VI, sections 10 and 11, the court expressly acknowledged at the outset of its discussion that "[t]he jurisdiction conferred by section 1160.8 is subject to those limitations." (*Ibid*.)

---

**13**    Regarding the standard of review issue, the court stated: "We … hold that the Legislature may accord finality to the findings of a statewide agency that are supported by substantial evidence on the record considered as a whole and are made under safeguards equivalent to those provided by the ALRA for unfair labor practice proceedings, whether or not the California Constitution provides for that agency's exercising 'judicial power.'" (*Tex-Cal*, *supra*, 24 Cal.3d at p. 346.)

The Supreme Court ultimately upheld section 1160.8's provision for appellate court review of the Board's final orders because such review was consistent with the original jurisdiction of appellate courts to hear extraordinary writs of mandate. (*Tex-Cal*, *supra*, 24 Cal.3d at p. 350.) Since the review described in section 1160.8 was essentially that of an extraordinary writ of mandate, it could be directed in the first instance to the Court of Appeal rather than to the superior court: "The Constitution … grants superior courts no broader extraordinary writ jurisdiction than it grants this court and the Courts of Appeal. [Citations.] Though appellate courts often decline for nonconstitutional reasons to assume jurisdiction in extraordinary writ matters deemed more appropriate for the superior court [citations], a mandate proceeding initiated in an appellate court is a constitutionally permitted vehicle for reviewing an administrative determination [citations]." (*Tex-Cal*, *supra*, at pp. 350–351.) However, to avoid any conflict with the nature of the appellate courts' original jurisdiction to entertain such writ relief, the Supreme Court refused to construe section 1160.8 as automatically requiring a plenary hearing "as a matter of right." Instead, in accordance with the basic characteristics of extraordinary writ proceedings, section 1160.8 was construed to permit summary denials of such writ petitions. (*Tex-Cal*, *supra*, at pp. 350–351.)[14]

As should be apparent from the above summary of the *Tex-Cal* case, the issue of whether an ALRA statute may divest the superior court of original jurisdiction was not before the court. Rather, *Tex-Cal* merely considered whether an ALRA statutory provision (§ 1160.8) initially directing judicial review to the appellate courts violated the grant of original jurisdiction to appellate courts by impermissibly expanding on that jurisdiction. The court held it did not do so. Moreover, as noted above, the court

---

[14] Likewise, *Tex-Cal* found the provision in section 1160.8 allocating responsibility to Courts of Appeal to enforce orders that they sustained on review was constitutional because it was consistent with the appellate court's original jurisdiction in proceedings in the nature of mandamus, since a writ of mandate may issue to compel the performance of an act that the law specifically enjoins. (*Tex-Cal*, *supra*, 24 Cal.3d at pp. 351–352.)

24.

prefaced its discussion of that issue by affirming the foundational principle that "[t]he jurisdiction conferred by section 1160.8 is *subject to*" the grant of original jurisdiction set forth in article VI, sections 10 and 11 of the California Constitution. (*Tex-Cal*, *supra*, 24 Cal.3d at p. 347, italics added.) It also explained that to construe section 1160.8 as creating an appeal of right "would put it *in conflict* with Article VI, section 10." (*Tex-Cal*, *supra*, at p. 350, italics added.) By using such terms, the court explicitly acknowledged the proposition that section 1160.8 had to fully comport with article VI, section 10 of the California Constitution. (*Tex-Cal*, *supra*, at pp. 351–352.) If there were some other constitutional provision (e.g., Cal. Const., art. XIV, § 1) that conferred on the Legislature the power to expand or alter original jurisdiction in regard to judicial review of the Board's orders, we do not think the Supreme Court would have expressly recognized that article VI, section 10 was supreme over the ALRA's judicial review provisions. For this reason, *Tex-Cal* appears to support the position advanced by Gerawan and Garcia that no constitutional provision gave the Legislature authority to enact section 1164.9. In any event, it is clear that the trial court's assumption that because *Tex-Cal* upheld the constitutionality of section 1160.8, the same result follows for section 1164.9, was plainly mistaken.

There is yet another reason to distinguish section 1160.8 from section 1164.9: Section 1160.8 has never been construed as barring all recourse to the superior court. Instead, such recourse has been permitted in exceptional circumstances where the prescribed judicial review process was unavailable or patently inadequate and a significant statutory or constitutional violation was asserted that warranted such redress. (See *Yamada Brothers v. Agricultural Labor Relations Bd*. (1979) 99 Cal.App.3d 112, 118–124, 129 [exception applied; trial court had jurisdiction to hear writ of mandate petition; demurrer ruling based on lack of jurisdiction per § 1160.8 reversed]; see also *Agricultural Labor Relations Bd. v. Superior Court* (1996) 48 Cal.App.4th 1489, 1498– 1510 [noting exceptions exist permitting superior court jurisdiction, but concluding that

such exceptions did not apply in that case]; *United Farm Workers v. Superior Court* (1977) 72 Cal.App.3d 268, 273–275 [same]; *Nishikawa Farms, Inc. v. Mahony* (1977) 66 Cal.App.3d 781, 788–789 [same].)

To illustrate this point—i.e., that section 1160.8 does not bar superior court jurisdiction in certain exceptional cases—it may be helpful to consider an example in which the exception has been applied. One notable example is the situation where the general counsel of the ALRB refuses a request to issue an unfair labor practice complaint. In that situation, there is no final order of the Board from which to seek review under the statutory procedure set forth in section 1160.8. Thus, the specified method of judicial review cannot be utilized. In *Belridge Farms v. Agricultural Labor Relations Bd*. (1978) 21 Cal.3d 551 (*Belridge*), the Supreme Court considered whether judicial review was nevertheless available by other means, looking to analogous federal cases under the National Labor Relations Act (29 U.S.C. § 151 et seq.; the NLRA). The court in *Belridge* noted that, while a refusal to issue a complaint under the NLRA is generally not reviewable, nevertheless "federal courts have exercised their equitable powers to review such determinations when the complaining party [(1)] raises a colorable claim that the decision violates [a] constitutional right [citations] or [(2)] exceeds a specific grant of authority [citations] [or (3) is] based on an erroneous construction of an applicable statute." (*Belridge*, *supra*, at p. 556.) The Supreme Court concluded that the Legislature, in enacting section 1160.8, intended to adopt the federal rule. (*Belridge*, *supra*, at pp. 556–557.)

More recently, in the case of *International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259 (*Fire Fighters*), which also involved the decision of the Public Employment Relations Board (PERB) not to file a complaint for unfair labor practices, the Supreme Court applied the interpretation

articulated in *Belridge* to a similar judicial review statute (Gov. Code, § 3509.5)[15] and expressly approved superior court jurisdiction in *Belridge*-like situations. (*Fire Fighters*, *supra*, at pp. 268–271.) In so holding, the Supreme Court emphasized that, in light of the original jurisdiction granted to superior courts under article VI, section 10 of the California Constitution, a presumption existed in favor of judicial review and the court would not "infer a legislative intent to entirely deprive the superior courts of judicial authority in a particular area." (*Fire Fighters*, *supra*, at p. 270.) Since the statutory language did not expressly foreclose such jurisdiction, it was construed as permitting judicial review in the superior court for the category of exceptional cases under consideration. (*Id*. at p. 271.)[16]

As the above cases serve to illustrate, judicial review provisions of the type set forth in section 1160.8 have *not* been construed as precluding all superior court jurisdiction relating to the administrative decisions or issues described in the statute. Exceptions have been allowed, particularly where judicial review under the prescribed statutory process would not be available and substantial statutory or constitutional violations are alleged.

---

**15** Government Code section 3509.5 directs judicial review of PERB decisions to the Courts of Appeal by means of petition for writ of mandate.

**16** The Supreme Court further concluded: "In section 3509.5, the Legislature has not expressly provided or otherwise clearly indicated that under California's [Meyers-Miller-Brown Act (MMBA) (Gov. Code, § 3500 et seq.),] superior courts are prohibited in all circumstances from exercising traditional mandamus jurisdiction to review a PERB decision refusing to issue a complaint. In particular, the Legislature has not explicitly barred superior court traditional mandamus review in the limited circumstances in which such review is available for similar agency decisions under the federal NLRA and the state ALRA. Accordingly, we agree with the Court of Appeal here that when PERB refuses to issue a complaint under the MMBA, a superior court may exercise mandamus jurisdiction to determine whether PERB's decision violates a constitutional right, exceeds a specific grant of authority, or is based on an erroneous statutory construction." (*Fire Fighters*, *supra*, 51 Cal.4th at p. 271.)

27.

In summary, compelling reasons exist for concluding that section 1164.9 is not analogous to section 1160.8.[17] Statutes such as section 1160.8 simply direct judicial review to the appellate courts; they do not eliminate all superior court jurisdiction and, in fact, such jurisdiction continues with respect to certain exceptional cases. In contrast, section 1164.9 seeks to altogether divest the superior court of jurisdiction over the matters described therein. Because the two statutes differ in these material ways, the fact that section 1160.8 has been found constitutional in *Tex-Cal* does *not* indicate the same result should follow with respect to section 1164.9. If anything, as we have pointed out above, the Supreme Court's analysis in *Tex-Cal* tends to support the conclusion we have reached that section 1164.9 is unconstitutional.[18]

E.     Conclusions on Jurisdiction

To recapitulate our constitutional holding: Based on longstanding Supreme Court authority (*Eshleman*, *supra*, 166 Cal. 640; *Loustalot*, *supra*, 30 Cal.2d 905; *County of Sonoma*, *supra*, 40 Cal.3d 361), a statute such as section 1164.9 is sustainable only if authorized by constitutional language that expressly or impliedly confers power on the Legislature to enact a law divesting the superior court of original jurisdiction. Because no constitutional provision warranted the enactment of section 1164.9, we have declared that section to be unconstitutional. This holding leads us to a follow-up question bearing on the outcome of the present appeal: With section 1164.9 removed from the equation, does the trial court have jurisdiction to consider the pleadings filed by Gerawan and Garcia below?

---

**17**     As will be seen, the section of the MMC statute that parallels section 1160.8 is actually section 1164.5.

**18**     That is so because, as discussed above, *Tex-Cal* presupposes that the judicial review provisions of the ALRA were subject to the grant of original jurisdiction set forth in article VI, section 10 of the California Constitution.

28.

We answer that question in the affirmative. Superior court jurisdiction exists because section 1164.5, one of the remaining provisions of the MMC statute addressing judicial review, is nearly identical to section 1160.8 in directing review to the Courts of Appeal in the first instance. Accordingly, the same exceptions would apply for allowing judicial review in the superior court. We believe Garcia's invocation of superior court jurisdiction came within the purview of the permitted exceptions. As to Garcia's causes of action challenging the Board's no-public-access ruling, the method of judicial review specified in section 1164.5 was *unavailable* to Garcia since he was not a party to the MMC process. (See § 1164.5, subd. (a) [after the Board's final order, "a party" to MMC proceedings "may petition for a writ of review in the court of appeal" on certain grounds]; see also *Yamada Brothers v. Agricultural Labor Relations Bd*., *supra*, 99 Cal.App.3d at p. 121 [a "prerequisite" of the exceptions to statutory judicial review procedure is the unavailability of an ultimate judicial remedy in conjunction with that procedure].) Not only was Garcia shut out from the statutory judicial review mechanism, but he alleged a colorable claim that the Board committed a substantial *constitutional* violation by denying public access to Garcia and other members of the public. (See, e.g., *United Farm Workers v. Superior Court*, *supra*, 72 Cal.App.3d at p. 274 ["a further exception has been recognized … when the constitutional rights of the complaining party have been violated"].) For these reasons, we conclude that Garcia's claims came within the scope of the exceptional cases noted above that allow for superior court review.

Gerawan's claims allege the identical constitutional violation that Garcia's did, and we believe those claims likewise may be heard in the superior court. Gerawan previously filed a petition for writ of review to this court in case No. F068526, challenging the Board's final MMC order on multiple statutory and constitutional grounds, including the same constitutional right-of-access claim argued in the present

29.

appeal.[19]  In our decision in that case, which is presently before the Supreme Court (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.*, review granted Aug. 19, 2015, S227243), we held that the MMC statute was unconstitutional for violating equal protection principles and impermissibly delegating legislative authority.  In light of those conclusions, we found it unnecessary to address other constitutional issues.  Thus, Gerawan followed section 1164.5 and fully exhausted the prescribed procedure[20] to obtain judicial review of the constitutional public access issue, but through no fault of its own we declined to reach it.  Meanwhile, the alleged constitutional violation committed by the Board persists and the purported need for declaratory relief has not abated, because the Board's no-public-access ruling was plainly a broad policy statement that will be applied in future MMC proceedings.  In these unique circumstances, particularly where Gerawan's causes of action challenge the same no-public-access ruling on the same constitutional grounds as Garcia's, we see no reason to deny Gerawan from having its declaratory relief claims heard with Garcia's in the superior court.

For these reasons, the superior court had jurisdiction to hear and consider the causes of action set forth in Garcia's and Gerawan's pleadings filed below, and the trial court erred by sustaining the demurrers on the ground that it lacked jurisdiction under section 1164.9.  Not only is section 1164.9 unconstitutional (as we have held), but the other judicial review provisions of the MMC statute did not create a jurisdictional impediment to hearing the case in the superior court, as we have explained above.

_____

[19]     We grant Gerawan's request for judicial notice of court records and filings in this related case.

[20]     Regarding exhaustion of remedies, we note the parallel ALRA statute providing for judicial review to an appellate court after a final order of the Board (i.e., § 1160.8) has been treated as establishing an "exclusive primary jurisdiction" in the Board, and principles of exhaustion of remedies have been applied to such provisions.  (See *California Coastal Farms, Inc. v. Doctoroff* (1981) 117 Cal.App.3d 156, 160–162; see also *United Farm Workers v. Superior Court*, *supra*, 72 Cal.App.3d at pp. 276–277 ["[w]ith limited exceptions not applicable to the facts of this case," the § 1160.8 process must run its course and cannot be bypassed].)

**IV. Related Issues Regarding Causes of Action Against the Board**[*]

In the Board's demurrer to Garcia's complaint-in-intervention, it asserted as an additional ground for demurrer that Garcia's claims were untimely under the 30-day deadline set forth in section 1164.5, subdivision (a). In relevant part, that section provides that a party to the MMC procedure may, "[w]ithin 30 days after the order of the board takes effect" file a petition for writ of review in the appellate court. The trial court accepted the Board's argument and made the 30-day deadline an alternative ground for its ruling sustaining the demurrer. We disagree with the Board and the trial court. Section 1164.5 describes the judicial review procedure for *parties* to the MMC process. Since Garcia was not a party to those proceedings, he could not avail himself of the review mechanism set forth in section 1164.5. Accordingly, the timing provision set forth in that section was inapplicable to Garcia's claims.

Another potential issue concerns the fact that the relief sought in the pleadings was *declaratory* relief. In their briefing on appeal, Gerawan and Garcia argue that even if section 1164.9 is not unconstitutional, it would still be permissible for them to seek declaratory relief in the trial court. They point to a number of cases allowing declaratory relief as a vehicle to challenge the legal validity of an overarching policy of an agency where there was an actual and present controversy regarding the policy. (See e.g., *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 177; *Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1429 ["overarching, quasi-legislative policy set by an administrative agency" subject to review in an action for declaratory relief].) Referring to such precedents, Gerawan and Garcia emphasize that their causes of action were not challenging a mere discretionary administrative decision or adjudication by the Board, but a broad and overarching quasi-legislative policy that unconstitutionally denies all public access to MMC proceedings. Although the policy is

---

[*] See footnote, *ante*, page 1.

31.

reflected in the Board's no-public-access ruling, they argue the policy is broader and more pervasive than that one ruling because it will continue to have an ongoing effect on all future MMC proceedings and will prospectively defeat constitutional rights of public access by its erroneous misinterpretation of constitutional law.

In response to this line of argument, the Board insists that declaratory relief cannot slip through the net of section 1164.9, which, by its clear terms, bars all forms of relief in the superior court challenging the Board's MMC decisions or rulings. Since none of the cases referred to by Gerawan and Garcia involved such an absolute jurisdictional ban, the Board argues they are distinguishable. The Board adds, in a brief footnote, that "[e]ven if" section 1164.9 does not bar the filing of such actions in the superior court, the proper vehicle for challenging a decision of an administrative agency is by petition for writ of mandate.

We observe that nearly all of the discussion by the parties on this matter concerns the hypothetical question of whether a declaratory relief cause of action may proceed in the superior court *even if* section 1164.9 were upheld. We need not go down that road. Since we have *not* upheld section 1164.9, but have declared it to be unconstitutional, that section is removed from the picture and creates no impediment to the declaratory relief causes of action. Therefore, we refrain from addressing the abstract issues presented by the parties that are rendered purely academic by our decision invaliding section 1164.9.

As to the Board's perfunctory footnote that the proper means to challenge its decision was by petition for writ of mandate rather than declaratory relief, that point was not adequately raised with sufficient legal discussion and, therefore, we disregard it and deem it forfeited for purposes of the instant appeal. (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482; *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *People v. Stanley* (1995) 10 Cal.4th 764, 793.) But even assuming for the sake of argument that the point was adequately raised, we would agree with Gerawan and Garcia that this case presents circumstances in which it

32.

was appropriate to pursue their challenge by means of a declaratory relief claim, whether or not a petition for writ of mandate might also have been maintained. The crux of the matter being challenged in the action below was not a discretionary administrative decision or an application of existing regulatory law to particular facts or circumstances, but an overarching policy declaration premised upon an (allegedly) erroneous interpretation of constitutional law that will be carried out to deny public access rights in future cases. In other words, it is not so much a particular contextual decision that is being placed at issue, but rather the broad policy that is reflected therein and will continue to be enforced. Under the circumstances, we believe that declaratory relief claim was a proper vehicle to raise such claims. (See, e.g., *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1565–1567 [although specific agency decisions on permit applications were involved, they were symptomatic of a broad policy that was contrary to law; therefore, declaratory relief permitted]; *Clovis Unified School Dist. v. Chiang* (2010) 188 Cal.App.4th 794, 808–809 [declaratory relief directed to policy of administrative agency is not an unwarranted control of discretionary agency decisions]; *K.G. v. Meredith*, *supra*, 204 Cal.App.4th at p. 177; *Californians for Native Salmon etc. Assn. v. Department of Forestry*, *supra*, 221 Cal.App.3d at p. 1429 ["overarching, quasi-legislative policy set by an administrative agency" is subject to review in an action for declaratory relief].)[21]

## V.    Causes of Action Against Individuals Sued in Official Capacities[*]

Both the complaint by Gerawan and the complaint-in-intervention by Garcia included causes of action under 42 U.S.C. section 1983 against the individual Board

---

[21]    We note further that, but for the trial court's mistaken belief that the entire action was jurisdictionally barred by section 1164.9, it might have reached this issue in the context of its demurrer ruling. Had that happened, even if the trial court agreed with the Board's position that a writ of mandate was the proper vehicle for this challenge of Board policy, we see no reason the trial court could not have granted leave to amend.

[*]    See footnote, *ante*, page 1.

members and the Board's executive secretary in their official capacities.[22]  In relevant part, 42 U.S.C. section 1983 creates liability against every "person" who, under color of state law, deprives another of "rights … secured by the Constitution."  The Board demurred to the 42 U.S.C. section 1983 claims.  In its demurrer to Gerawan's complaint, the Board argued there could be no liability under 42 U.S.C. section 1983 because in adopting the no-public-access ruling, the Board was performing a function comparable to a court and, as a result, its members were entitled to absolute judicial or quasi-judicial immunity.  Although the trial court sustained the demurrer primarily on the jurisdictional ground under section 1164.9, the court also stated in its tentative ruling (later confirmed as the court's order) that some form of absolute immunity would apparently apply to the 42 U.S.C. section 1983 claims, albeit the court characterized the immunity as being legislative rather than judicial immunity.

In its subsequent demurrer to Garcia's complaint-in-intervention, the Board challenged the 42 U.S.C. section 1983 claims on a different ground than in the demurrer to Gerawan's complaint, even though the two pleadings were virtually identical.  The difference was this:  In the later demurrer, the Board maintained that no 42 U.S.C. section 1983 cause of action could be stated against the individual officials because neither a state nor its officials acting in their official capacities are "person[s]" who can be sued under 42 U.S.C. section 1983 (citing *Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58, 70–71).  This shift in the Board's approach was evidently founded on a recognition that the 42 U.S.C. section 1983 causes of action named the individual defendants solely in their *official* capacities.[23]  The trial court fully agreed with the

---

[22]    The individual officials were expressly sued in their official capacities, and the allegations describing their conduct further reflect that was the case.

[23]    This shift may also explain why the Board no longer focused attention on personal immunity defenses.  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  (*Kentucky v. Graham* (1985) 473 U.S. 159, 166.)  Generally speaking, "[t]he only

34.

Board's position and sustained the demurrer to Garcia's 42 U.S.C. section 1983 claims on that ground.

In their opening briefs on appeal relating to their 42 U.S.C. section 1983 claims, Gerawan and Garcia present argument to the effect that no absolute legislative immunity or absolute judicial immunity was available to the individual Board members or officials in this case. Among other things, they assert that procedural safeguards were not present to make the no-public-access decision functionally comparable to a judicial ruling, and that established rulemaking procedures were not followed to show that the action was functionally comparable to a legislative act. (See, e.g., *Harlow v. Fitzgerald* (1982) 457 U.S. 800, 810 [functional approach followed in questions of immunity].) The Board's respondent briefs make no response to this argument by Gerawan and Garcia, apparently abandoning the issue for purposes of the present appeal.

Instead, the Board relies solely on its contention that state officials sued in their *official* capacities (as here) are not "person[s]" under 42 U.S.C. section 1983 and cannot be liable for damages under that statute. The Board's position is clearly correct. As the United States Supreme Court held in *Will v. Michigan Dept. of State Police*, *supra*, 491 U.S. at page 71: "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. [Citation.] As such, it is no different from a suit against the State itself. [¶] … [¶] *We hold that neither a State nor its officials acting in their official capacities are 'persons' under* [*42 U.S.C.*] *§ 1983.*" (Italics added; see *Hafer v. Melo* (1991) 502 U.S. 21, 27 [same]; *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829 ["*states and state officers* sued in their official capacity are not considered persons under [42 U.S.C.] section 1983 and are

immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess .…" (*Id*. at p. 167.) In personal capacity actions, personal immunity defenses apply, such as various forms of absolute and qualified immunity. (*Id*. at pp. 166–167; see *Pierce v. San Mateo County Sheriff's Dept*. (2014) 232 Cal.App.4th 995, 1018.)

35.

immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity"]; *Pierce v. San Mateo County Sheriff's Dept.*, *supra*, 232 Cal.App.4th at pp. 1008–1019 [the rule is essentially one of statutory intent; i.e., in enacting 42 U.S.C. section 1983, Congress sought to honor boundaries of the states' sovereign immunity].) Here, because the pleadings by Gerawan and Garcia reflect that this is an official-capacity case, the trial court correctly dismissed the 42 U.S.C. section 1983 damage claims. (See *Arizonans for Official English v. Arizona* (1997) 520 U.S. 43, 69, fn. 24 ["State officers in their official capacities, like States themselves, are not amenable to suit for damages under [42 U.S.C.] § 1983."].)

However, as accurately noted by Gerawan in its reply brief, an exception to the above stated rule exists with respect to *prospective injunctive relief*. Footnote 10 in *Will v. Michigan Dept. of State Police*, *supra*, at 491 U.S. at page 71 reaffirmed this limited exception, which is sometimes referred to in the cases as the *Ex parte Young* doctrine: "Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under [42 U.S.C. section] 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' [Citations.]" (See *Va. Office for Prot. & Advocacy v. Stewart* (2011) 563 U.S. 247, 254 [explaining *Ex parte Young* exception]; *Pennhurst State School & Hosp. v. Halderman* (1984) 465 U.S. 89, 101–103 [same]; *Ex parte Young* (1908) 209 U.S. 123, 159–160; see also *Pierce v. San Mateo County Sheriff's Dept.*, *supra*, 232 Cal.App.4th at p. 1009, fn. 4.) In this case, Gerawan and Garcia have each included a request for injunctive relief in their respective complaints. By this pleading request, they presumably will be able to seek an order or injunction directing compliance *prospectively* with federal constitutional law, which of course could only be issued in the event that the trial court concludes in the declaratory relief causes of action that public access is mandated under the federal Constitution.[24]

---

[24] Obviously, any such injunctive relief would be dependent upon the trial court first concluding there is an ongoing violation of federal constitutional law concerning public access.

Subject to that prerequisite for relief, we conclude that Gerawan and Garcia have adequately stated causes of action under 42 U.S.C. section 1983 for prospective injunctive relief against the Board's officials in their official capacity.

To summarize our disposition with respect to the 42 U.S.C. section 1983 causes of action, we affirm the trial court's ruling to the extent it eliminated any damage claims against the Board or its individual officials or members, but we reverse because a limited basis for relief under 42 U.S.C. section 1983 exists for prospective injunctive relief against the individual officials or members in their official capacities.

## VI.     Summary of Reasons for Remand[*]

In light of the trial court's erroneous conclusion that section 1164.9 was a valid jurisdictional bar, it never reached the underlying question of whether the Board's no-public-access policy violated rights of public access protected under the federal or state Constitutions. Gerawan and Garcia have asked that we proceed to rule on the public access issue directly since it is ultimately an issue of law, even though the trial court has not yet heard or addressed that matter. We decline that request. Instead, we remand the matter to the trial court for further proceedings consistent with this opinion. We do so for three reasons.

First, in response to our request for supplemental briefing on the proper disposition of this matter in the event section 1164.9 was found to be unconstitutional, the Board asserted that remand for further proceedings in the trial court should be ordered because, among other reasons, the Board would then have the opportunity to assert procedural and other defenses that, if successful, may defeat the causes of action without the necessity of reaching the constitutional issues. We agree that the Board should be given that opportunity. (See *Santa Clara County Local Transportation Authority v.*

---

Additionally, to the extent there are other prerequisites to such injunctive relief, they also would have to be shown.

[*]      See footnote, *ante*, page 1.

37.

*Guardino* (1995) 11 Cal.4th 220, 230 [as a principle of "'judicial self-restraint,'" we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us].)

Second, as an appellate court, our task is ordinarily reserved to correcting errors committed in the trial court, which we have done. (Code Civ. Proc., § 906.; see, e.g., *Leone v. Medical Board* (2000) 22 Cal.4th 660, 666; *Sanborn v. Pacific Mut. Life Ins. Co.* (1940) 42 Cal.App.2d 99, 105.)

Third, assuming the trial court does ultimately address the merits of the constitutional questions raised in the declaratory relief causes of action, we believe a more fully developed record may be necessary or helpful to the trial court, and may be requested and obtained from the parties, including additional factual, historical and/or contextual information relating to the nature of the civil proceeding at issue. We say that because, in addressing whether a First Amendment right of public access applies to a particular proceeding, courts are to consider two factors: (1) the historic tradition of public access or openness with respect to the type of proceedings at issue and (2) the utility or positive role of public access to the functioning of the particular process in question. (*Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 8; *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1218–1219; *Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 430; *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1054.) These factors and any relevant matters bearing upon them would have to be carefully evaluated in deciding whether a First Amendment access right exists with respect to the on-the-record phase of the MMC process. There may be a similar need for a careful consideration of factors or other contextual information with respect to the other declaratory relief claims as well. For all of these reasons, we believe it is best to remand the matter to the trial court.

**DISPOSITION**

The judgments of the trial court are reversed.  The matters are remanded to the trial court for further proceedings consistent with this opinion.  Costs on appeal are awarded to Garcia and Gerawan.


_____

KANE, J.

WE CONCUR:


_____

HILL, P.J.


_____

LEVY, J.