Filed 12/8/20 (unmodified opinion and prior 11/23/20 modification order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, et al.<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>ENERGY RESOURCES CONSERVATION AND DEVELOPMENT COMMISSION,<br><br>    Defendant and Appellant. | A157299<br><br>(Alameda County<br>Super. Ct. No. RG13681262)<br><br>**ORDER MODIFYING OPINION; AND ORDER DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT[*]:**

It is ordered that the opinion filed herein on November 20, 2020, be modified in the following particulars:

1. On page 5, on line 8, the word "electrical" in the quoted text is deleted and replaced with the word "electric".

2. On page 5, starting on line 16, the sentence beginning "However, by its own terms" is deleted and replaced with the following sentence:

> However, by its own terms the original section 25531 applied only to site certification decisions for powerplants that also required a need certificate from the PUC, so Energy Commission decisions on other applications (e.g., from a municipality) would have been subject to

---

[*] Streeter, Acting P.J., Tucher, J. and Brown, J. participated in the decision.

1

judicial review the conventional way, by writ of mandate in the superior court.

3.   On page 22, on lines 14 and 15, the words "section 1660.8" are deleted and replaced with the words "section 1160.8".

4.   On page 27, line 16, the words "section 22531(a)" are deleted and replaced with the words "section 25531(a)".

5.   On page 33, the following text is added to the end of the paragraph immediately after the citation "(*Communities I, supra,* 19 Cal.App.5th at pp. 738–740.)":

> Section 25531(a) is unconstitutional in its entirety because it is no longer narrowly tailored to expediting review of Energy Commission decisions that are prerequisite to PUC decisionmaking.  (Cf. *County of Sonoma*, *supra*, 40 Cal.3d at p. 370.)  The happenstance that on rare occasions an Energy Commission site certification may still be statutorily required before the PUC can issue a need certificate to an investor-owned utility does not defeat a facial challenge.

6.   On page 35, line 4, the words "section 23531(b)" are deleted and replaced with the words "section 25531(b)".

7.   On page 35, line 19, the words "section 22531(b)" are deleted and replaced with the words "section 25531(b)".

8.   On page 37, a new footnote 9, is added to the end of the paragraph, immediately after the sentence "The Energy Commission misreads *Southern Pacific.*"  The text of footnote 9 reads:

> [9]  In the trial court, the Energy Commission also offered to stipulate "that review of its power plant decisions may include an inquiry into whether substantial evidence supports its findings,"~(1 AA 84)~ but this offer, too, falls short.  We note that "*may* include" is ambiguous as to what it *requires* of courts, and that we need not accept a stipulation at odds with the plain meaning of the statute.

These modifications do not effect a change in the judgment.

Appellant's petition for rehearing is denied.


Dated:_____          _____ Acting P.J.

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Stephen Kaus

Counsel:       California Energy Resources Conservation and Development
               Commission, Darcie L. Houck, Chief Counsel, William M.
               Chamberlain, Chief Counsel, retired; Xavier Becerra, Attorney
               General; Robert W. Byrne, Senior Assistant Attorney General; Myung
               J. Park, Supervising Deputy Attorney General; Bryant Cannon, Marc.
               N. Melnick, Deputy Attorneys General for Defendant and Appellant

               Ellison Schneider Harris & Donlan LLP, Christopher T. Ellison for
               Ellison Schneider Harris & Donlan LLP and Independent Energy
               Producers Association as Amici Curiae on behalf of Defendant and
               Appellant

               California Independent System Operator Corp., Roger E. Collanton,
               William H. Weaver for California Independent System Operator
               Corporation as Amici Curiae on behalf of Defendant and Appellant

               EarthJustice, Stacey P. Geis, Gregory D. Muren; Communities for a
               Better Environment, Shana Lazerow for Plaintiffs and Respondents

Filed 11/23/20 (unmodified opinion attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>ENERGY RESOURCES CONSERVATION AND DEVELOPMENT COMMISSION,<br><br>    Defendant and Appellant. | A157299<br><br>(Alameda County<br>Super. Ct. No. RG13681262)<br><br>**ORDER MODIFYING OPINION**<br>**[CHANGE IN JUDGMENT]** |

**THE COURT\*:**

The opinion filed on November 20, 2020 is modified with regard to costs as follows.

1. On page 38, the disposition is modified to read:

The judgment is affirmed. Appellant is to pay respondents' costs on appeal. (Cal. Rules of Court, rule 8.278.)

This modification changes the judgment.

Dated:_____        _____

---

\* Streeter, Acting P.J., Tucher, J. and Brown, J. participated in the decision.

Trial Court:  Alameda County Superior Court

Trial Judge:  Hon. Stephen Kaus

Counsel:  California Energy Resources Conservation and Development Commission, Darcie L. Houck, Chief Counsel, William M. Chamberlain, Chief Counsel, retired; Xavier Becerra, Attorney General; Robert W. Byrne, Senior Assistant Attorney General; Myung J. Park, Supervising Deputy Attorney General; Bryant Cannon, Marc. N. Melnick, Deputy Attorneys General for Defendant and Appellant

Ellison Schneider Harris & Donlan LLP, Christopher T. Ellison for Ellison Schneider Harris & Donlan LLP and Independent Energy Producers Association as Amici Curiae on behalf of Defendant and Appellant

California Independent System Operator Corp., Roger E. Collanton, William H. Weaver for California Independent System Operator Corporation as Amici Curiae on behalf of Defendant and Appellant

EarthJustice, Stacey P. Geis, Gregory D. Muren; Communities for a Better Environment, Shana Lazerow for Plaintiffs and Respondents

*Communities for a Better Environment et al. v. Energy Resources Conservation and Development Commission* (A157299)

Filed 11/20/20 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> ENERGY RESOURCES CONSERVATION AND DEVELOPMENT COMMISSION, <br><br>     Defendant and Appellant. | A157299 <br><br> (Alameda County Super. Ct. No. RG13681262) |

Nonprofit environmental groups Communities for a Better Environment and Center for Biological Diversity bring a constitutional challenge to Public Resources Code section 25531 (section 25531), a statute that limits judicial review of decisions by the Energy Resources Conservation and Development Commission (Energy Commission) on the siting of a thermal powerplant.

There are two aspects to Plaintiffs' challenge. Section 25531, subdivision (a) (section 25531(a)) provides that an Energy Commission siting decision is "subject to judicial review by the Supreme Court of California." Plaintiffs contend this provision abridges the original jurisdiction of the superior courts and courts of appeal over mandate petitions, as conferred on them by Article VI, section 10 of the California Constitution. Plaintiffs also challenge section 25531, subdivision (b) (section 25531(b)), which provides

1

that findings of fact in support of an Energy Commission siting determination "are final." This provision allegedly violates the separation of powers doctrine by depriving courts of their essential power to review findings of an administrative agency. (See Cal. Const., Art. III, § 3; Art. VI, § 1; all references to "Articles" are to the California Constitution.) The trial court agreed with Plaintiffs on both points and granted them summary judgment.

On appeal, the Energy Commission makes two arguments as to why section 25531(a) is a proper exercise of the Legislature's power to limit judicial review of Energy Commission siting decisions. The commission first argues that Article VI, section 10 confers original jurisdiction on the Supreme Court, courts of appeal, and superior courts collectively, subject to legislative direction that a particular court should hear a particular kind of dispute. In the alternative, the commission urges us to uphold section 25531 under the broad authority the constitution gives the Legislature over decisions of the Public Utilities Commission (PUC), an agency that plays a closely related role in regulating electric utilities. (See Art. XII, § 5.) Indeed, the California Supreme Court upheld on this basis an earlier version of section 25531 in *County of Sonoma v. State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361 (*County of Sonoma*), and the commission insists that precedent controls this case.

The Energy Commission also argues that the trial court erred by declaring section 25531(b) unconstitutional on its face. This challenge should have been rejected because section 25531(b) can be interpreted as permitting courts to test the underpinnings of an Energy Commission siting decision under the substantial evidence test, the commission contends.

We reject the Energy Commission's arguments.  First, we conclude the constitutional grant of original jurisdiction in Article VI includes the superior courts and courts of appeal and may not be circumscribed by statute, absent some other provision in the constitution empowering the Legislature to take such action.  Second, we determine that legislative amendments to section 25531 in the years since *County of Sonoma* was decided have broken the once-tight link between the regulatory authority of the PUC and powerplant siting decisions of the Energy Commission, such that the plenary power Article XII grants the Legislature over activities of the PUC no longer authorizes section 25531(a).  As to section 25531(b), we conclude this provision violates the judicial powers clause by preventing courts from reviewing whether substantial evidence supports the Energy Commission's factual findings.  We therefore affirm the judgment.

## BACKGROUND

### I. The Energy Commission's Regulatory Function and Powers

For context, we begin with a brief overview of the Energy Commission's regulatory authority under the Warren-Alquist State Energy Resources Conservation and Development Act (the Warren-Alquist Act).  (Pub. Resources Code, § 25000 et seq.)

In 1974, the Legislature passed the Warren-Alquist Act to establish and consolidate the state government's responsibility for energy resources— responsibilities that include maintaining a reliable supply of electrical energy to meet public need and regulating electrical generating and transmission facilities.  (*Department of Water & Power v. Energy Resources Conservation & Development Com.* (1991) 2 Cal.App.4th 206, 214.)  The Warren-Alquist Act created the Energy Commission, tasking it with "establishing the state's energy policy and 'insuring adequate electricity supplies with minimum

3

adverse effect on the state economy and environment.' " (*Ibid*; see Pub. Resources Code, § 25200.)

The Warren-Alquist Act "mandates simplified and expedited processing and review of applications to certify the siting, construction, and modification of thermal powerplants." (V*oices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 517.) To that end, the Energy Commission exercises " 'exclusive power to certify all sites and related facilities' for thermal powerplants with generating capacities of 50 or more megawatts." (*Ibid*.) Acting as a sort of one-stop shop, the Energy Commission certifies any new construction of, or modification to, such a thermoelectric powerplant, whether the plant is built by a large investor-owned utility, an independent power producer, a private power user, or a municipality. "The issuance of a certificate by the commission shall be in lieu of any permit, certificate, or similar document required by any state, local or regional agency, or federal agency to the extent permitted by federal law, for such use of the site and related facilities." (Pub. Resources Code, § 25500.)

There is a separate certification process required, however, when it is a public utility seeking to build a powerplant. The PUC is "charged with ensuring that public utilities 'furnish and maintain such . . . service, instrumentalities, equipment, and facilities . . . as are necessary to promote' " public safety and convenience. (*Utility Consumers' Action Network v. Public Utilities Com.* (2010) 187 Cal.App.4th 688, 695, quoting Pub. Util. Code, § 451.) Absent an exception, a public utility may therefore not begin construction of a new facility or "any extension thereof, without having first obtained from the [PUC] a certificate that the present or future public convenience and necessity require or will require such construction." (Pub. Util. Code, § 1001.) And, the public utility may not secure this Certificate of

4

Public Convenience and Necessity (need certificate) from the PUC until after it obtains a site certificate from the Energy Commission. (Pub. Util. Code, § 1002, subd. (b).)

Since its inception, the Warren-Alquist Act has restricted judicial review of Energy Commission powerplant certification decisions. (*Voices of the Wetlands, supra*, 52 Cal.4th at p. 517.) When section 25531 was first adopted, it provided that Energy Commission decisions "on any application of any electrical utility for certification of a site and related facility shall be subject to judicial review in the same manner as the decisions of the Public Utilities Commission on the application for a Certificate of Public Convenience and Necessity for the same site and related facility." (Stats. 1974, ch. 276, § 2, pp. 501, 532; see *Voices of the Wetlands,* at p. 517, fn. 9.) At that time, the Public Utilities Act provided "for exclusive Supreme Court review" of decisions and orders of the PUC. (*Ibid*.) Therefore, section 25531 as originally enacted restricted judicial review of these Energy Commission siting decisions to the California Supreme Court. (*Ibid*.) However, by its own terms the original section 25531 applied only if the applicant was an "electrical utility," so Energy Commission decisions on other applications— from, say, a private power producer or municipality—would have been subject to judicial review the conventional way, by writ of mandate in the superior court. (See *County of Sonoma*, *supra*, 40 Cal.3d at pp. 365–366 ["general judicial review provision," Pub. Resources Code, § 25901, applies except on site certification decisions for powerplants "that also must be certified by the PUC"].)

In 1996, the Legislature amended the Public Utilities Code to provide for judicial review of PUC decisions by either the Supreme Court or the courts of appeal. (*Voices of the Wetlands, supra*, 52 Cal.4th at p. 517, fn. 9.)

5

Under the unamended language of former section 25531, the automatic result of this change was that judicial review of Energy Commission siting decisions on applications from electrical utilities expanded to include writ review in the courts of appeal as well as the Supreme Court. (*Voice of Wetlands*, at p. 517; former § 25531, subd. (a); Pub. Util. Code, § 1759, subd. (a).) However, in 2001, the Legislature adopted an emergency amendment to section 25531 giving only the Supreme Court jurisdiction to review all Energy Commission powerplant certification decisions. (*Voices of the Wetlands,* at p. 517.)

Currently, section 25531(a) states: "The decisions of the commission on any application for certification of a site and related facility are subject to judicial review by the Supreme Court of California." This review is exclusive, as "no court in this state has jurisdiction" otherwise to entertain such challenges. (§ 25531, subd. (c).) Pursuant to section 25531(b), the Supreme Court's "review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the United States Constitution or the California Constitution. The findings and conclusions of the commission on questions of fact are final and are not subject to review, except as provided in this article. These questions of fact shall include ultimate facts and the findings and conclusions of the commission." (§ 25531(b).)

## II. The Present Action

In May 2013, Plaintiffs filed a complaint for declaratory and injunctive relief against the Energy Commission and other Doe defendants.[1] Their first two causes of action are facial challenges to the constitutionality of section

---

[1] At some point, the State Controller was named as a defendant but was dismissed from the case prior to summary judgment proceedings.

6

25531.  Plaintiffs allege that section 25531(a) unconstitutionally restricts "the powers of the superior and appellate courts" to hear citizen challenges to Energy Commission decisions, and that section 25531(b) unconstitutionally restricts "a court's ability to review the facts in such challenges."  In a third cause of action, Plaintiffs allege that funds expended by the Energy Commission to implement these provisions constitute illegal expenditures under Code of Civil Procedure section 526a, but this claim was later deemed dismissed and is not at issue in this appeal.

In 2014, the trial court dismissed the action after sustaining the Energy Commission's demurrer to Plaintiffs' complaint without leave to amend, but that judgment was subsequently reversed by a different panel of this court.  (*Communities for a Better Environment v. State Energy Resources Conservation & Development Com.* (2017) 19 Cal.App.5th 725 (*Communities I*).)  This court held the trial court erred in concluding that Plaintiffs' claims did not arise out of an actual controversy and were not ripe for review.  We found the dispute between the parties sufficiently concrete to make declaratory relief appropriate and concluded withholding judicial consideration would result in hardship.  (*Id*. at p. 733–738.)  We emphasized that the factual context of an individual Energy Commission certification proceeding is not necessary nor "even useful" to a proper resolution of the constitutional issues raised.  (*Id*. at p. 735.)

In August 2018, Plaintiffs filed a motion for summary judgment.  Two months later, the Energy Commission filed a cross-motion for summary judgment or summary adjudication.  The trial court held a hearing on both motions and, on April 2, 2019, granted Plaintiffs' and denied the Energy Commission's, explaining its rulings in a carefully reasoned order.  Before addressing constitutional issues, the court found that Plaintiffs had

7

established standing, that the constitutionality of a statute may be the proper subject of a claim for declaratory relief, and that these legal issues could be resolved on summary judgment. On the merits, the court found that section 25531(a) is an unconstitutional legislative abridgment of the jurisdiction of the courts and that section 25531(b) unconstitutionally abridges the courts' essential power to review agency findings.

## DISCUSSION

Trial court rulings on motions for summary judgment are reviewed de novo. (*California Society of Anesthesiologists v. Brown* (2012) 204 Cal.App.4th 390, 399.) Moreover, " ' "[t]he interpretation of a statute and the determination of its constitutionality are questions of law," ' " subject to de novo review. (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799; see also *DiCarlo v. County of Monterey* (2017) 12 Cal.App.5th 468, 489.) Thus, we independently review the issues on appeal.

## I. Section 25531(a) Unconstitutionally Abridges the Courts' Original Jurisdiction

The Energy Commission first contends the trial court erred in finding that section 25531(a) unconstitutionally divests superior courts and courts of appeal of jurisdiction to review Energy Commission siting decisions.[2] According to the Energy Commission, our state Constitution empowers the Legislature to decide which court has jurisdiction to review an agency's administrative rulings.

### A. Constitutional Framework

The original jurisdiction of the courts is conferred by Article VI, section 10, which states, in part: *The Supreme Court, courts of appeal, superior*

---

[2] The Energy Commission's defense of section 25531(a) is echoed by amici curie, Independent Energy Producers Association, Ellison Schneider Harris & Donlan LLP and Independent System Operator Corporation.

8

*courts,* and their judges have original jurisdiction in habeas corpus proceedings. Those courts also *have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition.* The appellate division of the superior court has original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition directed to the superior court in causes subject to its appellate jurisdiction. [¶] Superior courts have original jurisdiction in all other causes." (Italics added.)

Because this grant of jurisdiction is conferred on courts by the Constitution, it "may not be diminished by statute." (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 252 (*Matosantos*).) This maxim is enshrined by more than one hundred years of precedent. (See *Chinn v. Superior Court* (1909) 156 Cal. 478, 480 ["where the judicial power of courts, either original or appellate, is fixed by constitutional provisions, the legislature cannot either limit or extend that jurisdiction"]; *Gerawan Farming, Inc. v Agricultural Labor Relations Bd.* (2016) 247 Cal.App.4th 284, 294 (*Gerawan Farming*) [Legislature does not have power to "defeat or impair" the courts' jurisdiction].)

This tenet is subject to an important caveat: the Legislature may limit judicial review of an administrative decision when such action is authorized by some other provision of the Constitution. (*Pacific Telephone and Telegraph Co. v. Eshleman* (1913) 166 Cal. 640, 652 & 689 (*Eshleman*) [Legislature may not curtail the jurisdiction vested in superior courts by the constitution unless the constitution itself gives the Legislature such power]; *Great Western Power Co. v. Pillsbury* (1915) 170 Cal. 180, 182–183 (*Great Western Power*) ["in the absence of some special constitutional authorization," Supreme Court's jurisdiction may "not be take away or impaired by

9

legislative act"]; *Gerawan Farming, supra*, 247 Cal.App.4th at p. 294 ["statutes barring judicial review of certain administrative decisions except in the Courts of Appeal and/or Supreme Court have been upheld, but only where the Legislature's authority to enact such laws was found to be expressly or impliedly granted by other constitutional provisions"].)

Using these principles to frame our review, we employ a two-prong inquiry:  Does section 25531(a) divest superior courts and courts of appeal of original jurisdiction conferred on them in Article VI, section 10?  If so, does another provision of the constitution, specifically Article XII, section 5, empower the Legislature to take such action?

## B.  Section 25531(a) Divests Superior Courts and Courts of Appeal of Their Article VI Original Jurisdiction

Our answer to the Energy Commission's first challenge is informed by a century of California Supreme Court jurisprudence, as section 25531(a) is not the Legislature's first attempt to confine a category of extraordinary writ proceedings to a specific level of our court system.  (See, e.g., *Eshleman, supra*, 166 Cal. at p. 652; *Great Western Power, supra*, 170 Cal. at pp. 182–183; *Matosantos, supra*, 53 Cal.4th at p. 252.)  Unperturbed by this wall of precedent refusing to allow the Legislature to divest our courts of original jurisdiction without independent authority elsewhere in the Constitution, the Energy Commission posits that Article VI, section 10 itself empowers the Legislature to decide which court has original jurisdiction over extraordinary writ proceedings.  The Energy Commission contends its construction of Article VI, section 10 is compelled by the text of the constitutional provision, its legislative history, and pertinent case authority.  We disagree.

### 1.  The text of the constitutional provision

On its face, Article VI, section 10 states that the Supreme Court, courts of appeal "and" superior courts all have "original jurisdiction" over

10

extraordinary writ proceedings, and also that the superior courts have original jurisdiction in "all other causes." Giving this language its plain meaning would indicate that all three levels of our state court have original jurisdiction in all extraordinary writ proceedings. To the extent this language "is clear and unambiguous," its "plain meaning governs." (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444–445.)

The Energy Commission argues that the meaning of Article VI, section 10 is not apparent from its language because it does not expressly delineate which level of the court functions as the court of first resort in extraordinary writ proceedings, nor does the provision specify "what the Legislature can or cannot do." According to the commission, this silence "provides ambiguity about whether the Legislature can" enact statutes specifying which court may exercise its original jurisdiction to decide a given matter. To resolve this perceived ambiguity, the Energy Commission proposes that the term "and" as used in section 10 should be defined to mean, not "in addition to," but rather "or." Under this reading, the Legislature decides which among the courts has jurisdiction to hear extraordinary writ proceedings in any given situation.

Not only are we reluctant to read "and" as "or," but we find no ambiguity in the fact that Article VI, section 10 is silent as to any jurisdiction-setting power of the Legislature. Article VI addresses the function of the judicial branch and, within that article, section 10 describes the courts' original jurisdiction, including in proceedings for extraordinary relief. Legislative power is a different subject, covered by other provisions. Nothing in Article VI, section 10 so much as hints that the Legislature has the power to strip certain courts of their original jurisdiction.

11

Instead, we see that where the Constitution intends an exception to its grant of jurisdiction or leeway for the Legislature to define a court's jurisdiction, it says so explicitly. For example, until it was amended in 2002 to reflect unification of the municipal and superior courts, the final sentence of Article VI, section 10 read, "Superior courts have original jurisdiction in all other causes *except those given by statute to other trial courts*." (See former Article VI, § 10, prior to amendment approved by voters, Prop. 48, effective Nov. 6, 2002, italics added.) And today, the parallel constitutional provision addressing the courts' appellate jurisdiction, Article VI, section 11, provides: "The Supreme Court has appellate jurisdiction when judgment of death has been pronounced. *With that exception* courts of appeal have appellate jurisdiction when superior courts have original jurisdiction in [certain causes], and *in other causes prescribed by statute*. When appellate jurisdiction in civil causes is determined by the amount in controversy, *the Legislature may change the appellate jurisdiction of the courts of appeal* by changing the jurisdictional amount in controversy." (Italics added.) In light of the California Constitution's express grants of authority to the Legislature to adjust, in other circumstances, the jurisdiction of the courts,[3] we decline to read the failure similarly to provide for legislative adjustment of the courts' original jurisdiction over extraordinary writs as an ambiguous grant of such authority.

---

[3] Similarly, language in the federal Constitution expressly empowers Congress to adjust the jurisdiction of the U.S. Supreme Court. (See U.S. Constitution, Art. III, § 2 ["In all the other Cases before mentioned, the Supreme Court shall have appellate Jurisdiction, both as to Law and Fact, *with such Exceptions, and under such Regulations as the Congress shall make*"], italics added.)

12

Nor are we persuaded that Article VI, section 10 is rendered ambiguous by its failure to specify a single court of first resort for extraordinary writ proceedings. As the Energy Commission concedes, courts have the power to decide how to exercise their shared original jurisdiction in habeas corpus cases. (Citing *In re Hillery* (1962) 202 Cal.App.2d 293, 294.) Of course, courts have this same discretion when it comes to other extraordinary proceedings, such as writs of mandate, and have long applied settled judicial policy in determining when to exercise original jurisdiction there. (*Cohen v. Superior Court* (1968) 267 Cal.App.2d 268, 270–271.) In most circumstances, an application for a writ of mandate "should first be made to the superior court," but courts of appeal and the Supreme Court may exercise original jurisdiction "where some emergency exists or the public welfare is involved." (*Roma Macaroni Factory v. Giambastiani* (1933) 219 Cal. 435, 437; see also *Mexican American Political Association v. Brown* (1973) 8 Cal.3d 733, 734.)

The Energy Commission points out that the statutory law of this state is replete with examples of the Legislature "assisting" courts by requiring that a writ of mandate be filed in the superior court. (Citing, e.g., Gov. Code, § 6259; Wat. Code, § 13330, subd. (a).) Although we are not called upon to decide the scope of the Legislature's power to provide this kind of assistance, we note that these statutes largely codify settled case law establishing that mandate proceedings should generally originate in the superior courts, and that such statutes have in any event not prevented our Supreme Court from exercising its original jurisdiction in appropriate cases. (See, *infra* at pp. 19, 24 [discussing *Great Western Power*, *supra*, 170 Cal. at pp. 182–183 and *Matosantos*, *supra*, 53 Cal.4th at p. 252].) Section 25531(a) is different. Read in conjunction with section 25531, subdivision (c), it unequivocally bars superior courts and courts of appeal from ever reviewing Energy Commission

13

siting decisions, which brings it in direct conflict with Article VI, section 10 granting these courts original jurisdiction.

## 2. Legislative History

The Energy Commission contends that the legislative history of Article VI, section 10 evinces an intention that the Legislature specify which court shall function as the court of first resort in writ of mandate proceedings. The commission relies on select excerpts from a 1966 report prepared by the California Constitution Revision Commission that led to comprehensive amendments to the Constitution, including the adoption of Article VI, section 10. (See Cal. Const. Revision Com., Proposed Revision (1966) (1966 Report).) Because these 1966 amendments were "largely drafted" by the Revision Commission, courts may consult the 1966 Report "to determine the intent and objective of ambiguous provisions." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 94.) Importantly though, "resort to extrinsic aids to interpret a constitutional provision is justified only when the Constitution's language is ambiguous." (*Powers*, at p. 93*; see also Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority*, *supra*, 44 Cal.4th at pp. 444–445.) Although we find no ambiguity in the text of Article VI, section 10, we consider the Energy Commission's legislative history arguments out of an "abundance of caution." (*Powers*, at p. 93.)[4]

In its 1966 Report, the Revision Commission proposed to address the courts' jurisdiction over extraordinary writ proceedings by including in Article VI, section 10 the exact language that was later adopted: "The

---

[4] Plaintiffs' request for judicial notice of legislative material pertaining to the 1966 amendments is granted. However, we deny the Energy Commission's request for judicial review of a document listing the names of members of the Constitutional Revision Commission because that information is not relevant to our disposition of this appeal.

14

Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings. Those courts also have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition." (1966 Report, *supra,* at p. 89.) As we have seen, this language does not support the Energy Commission's interpretation of Article VI, section 10.

The Energy Commission seizes first on an isolated sentence in the 1966 Report, taken out of context, as support for its reading of section 10. "The proposed section permits the Legislature to name the instances of original jurisdiction in superior courts," says the 1966 Report. (1966 Report, *supra*, at p. 90.) But the paragraph that contains this statement does not discuss the courts' original jurisdiction in extraordinary writ proceedings. It comments on a different provision of proposed section 10—one addressing the superior courts' original jurisdiction to decide most civil and criminal actions. (*Id.* at pp. 89–90.) The 1966 Report proposed to replace scattered provisions in former Article VI with the following sentence in a new section 10, immediately after the sentence addressing extraordinary writs: "Superior courts have original jurisdiction in all other causes except those given by statute to other trial courts." (*Id.* at p. 89.) It was with regard to this proposal that the Revision Commission commented the proposed revision would permit the Legislature to name the instances of the superior courts' original jurisdiction. Because the statement was unrelated to original jurisdiction in extraordinary writ proceedings, it provides no support for the Energy Commission's argument.

Offering a second argument from legislative history, the Energy Commission speculates about a proposed amendment to Article VI that was never enacted. The rejected provision, proposed as a new section 15, stated:

15

"The Legislature may provide for judicial review in a court of record of any administrative action of state or local government, but may not place review in the Supreme Court in the first instance or give trial court functions to the Supreme Court or courts of appeal." (1966 Report, *supra*, at p. 92.) The Energy Commission argues that section 15 was rejected because the Legislature did not want to change existing law in this manner, so we should not circumvent the process for revising the Constitution by now construing section 10 to preclude placing review of an administrative action "in the Supreme Court in the first instance." This argument is chock-full of assumptions about the state of the law before Article VI was amended and the reason section 15 was rejected. Plaintiffs dispute these assumptions, arguing that section 15 could have been deemed unnecessary since existing law already prevented the Legislature from confining review of an administrative action to the Supreme Court unless some other constitutional provision gave it such power. This debate highlights the fact that "[u]npassed bills, as evidences of legislative intent, have little value." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396, italics omitted.)

This debate also focuses, for no good reason, on only the second half of proposed section 15—the portion that would have prevented the Legislature from placing review of administrative decisions "in the Supreme Court in the first instance." We see no reason the Energy Commission's argument could not be trained, with equal force, on the initial portion of proposed section 15, which would have allowed the Legislature to "provide for judicial review in a court of record" as it saw fit. If the Energy Commission's approach were well taken, we might paradoxically be compelled to conclude that the Legislature chose not to adopt proposed section 15 because it did not want to change

16

existing law so as to give itself this power, and that we should accordingly decline to construe section 10 as authorizing the Legislature to designate which court may exercise original jurisdiction to review an administrative action.

Ignoring this complication, the Energy Commission contends that section 15 should not be treated like an unpassed bill but as tantamount to an affirmative decision not to amend a statute. (Citing *People ex rel. Eichenberger v. Stockton Pregnancy Control Medical Clinic, Inc.* (1988) 203 Cal.App.3d 225, 239.) *Eichenberger* arose out of a dispute about a medical clinic's reporting obligations under the Child Abuse and Neglect Reporting Act. (Pen. Code, § 11164 et seq.) In construing that law, the appellate court observed: "When a statute is amended by the Legislature in certain respects, the failure to amend the statute in other respects indicates an intention to leave the law unchanged in those respects." (*Eichenberger*, at p. 239.) This principle has no application here because section 15 was not a proposed amendment to an existing provision in the Constitution. As the Revision Commission's 1966 Report explained, there was "no parallel provision in the existing Constitution for judicial review of administrative decisions." Thus, the rejection of proposed section 15 did not leave in place some other constitutional provision to serve as a benchmark justifying the Energy Commission's narrow view of the courts' original jurisdiction in extraordinary writ proceedings.

### 3. Case Law

The Energy Commission faces its most daunting task in arguing that case law supports its reading of Article VI, section 10. As we have noted, the Court has consistently rejected the idea that the Legislature can divest any

17

level of our courts of original jurisdiction over extraordinary writ proceedings, unless another constitutional provision authorizes such action.

An early example is *Eshleman*, which concerned an application to the California Supreme Court for review of a decision of the Railroad Commission (forerunner to the PUC)[5] regarding long-distance telephone service. (*Eshleman, supra*, 166 Cal. at p. 646.)  Before reaching the merits, our Supreme Court considered a constitutional challenge to the pertinent provision of the Public Utilities Act, which authorized writ review solely in the Supreme Court.  (*Eshleman*, at p. 649.)  As in our case, the unconstitutionality of this provision was urged on the ground "that the attempt to confer exclusive jurisdiction upon the supreme court" was "a plain legislative attempt to curtail the jurisdiction vested in the superior court by the constitution."  (*Ibid*.)  The Supreme Court agreed with this analysis as far as it went, concluding:  "[t]he legislature has with deliberation restricted and curtailed the jurisdiction vested in the superior courts of this state by the constitution.  And upon this but one thing can be said.  If there be not in the constitution itself warrant and power to the legislature to do this thing, its effort must be declared illegal."  (*Id*. at p. 652.)  But the Court then went on to find that Article XII of the Constitution gave the Legislature plenary power over the Railroad Commission and thus authorized the jurisdiction-destroying provision of the Public Utilities Act.  (*Id*. at pp. 652–659.) Pointing to this second legal conclusion, the Energy Commission dismisses the Court's first as dicta, unnecessary to the outcome of the case.

---

[5] See *Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1038 [Article XII "was amended in 1946 to change the name of the Railroad Commission to the Public Utilities Commission"].

*Great Western Power*, which followed *Eshleman* two years later, is not so easily dismissed. (*Great Western Power, supra*, 170 Cal. 180.) The case concerned an award made by the Industrial Accident Commission to the survivors of a man killed in an industrial accident. (*Id*. at p. 181.) Our Supreme Court reached the merits of a petition for writ of review, although the petition was filed in the first instance in the Supreme Court and the pertinent statute required such petitions to be filed in the superior court. (*Id*. at pp. 182–183.) Citing *Eshleman* and the absence, at the time, of any "special constitutional authorization" relating to compensation for industrial accidents,[6] the Supreme Court found the statute "not . . . effective to prevent application to this court to exercise its original jurisdiction." (*Id*. at pp. 182–183.) Legislation that divested the Supreme Court of its original jurisdiction was, to that extent, unconstitutional.

The Energy Commission contends that, whatever the law may have been prior to 1966, after Article VI was amended to its current form, the Supreme Court has construed Article VI, section 10 to empower the Legislature to assign administrative mandate cases to specific courts. But neither of the cases on which the commission relies establishes that proposition.

The Energy Commission first relies on *Solberg v. Superior Court* (1977) 19 Cal.3d 182 (*Solberg*), a constitutional challenge to Code of Civil Procedure section 170.6, which provides for the disqualification of a trial judge upon an affidavit asserting prejudice. (*Solberg*, at p. 186–187.) *Solberg* held that

---

[6] A later constitutional provision gave "the Legislature 'plenary power' to 'create, and enforce a complete system of workmen's compensation,' " and this provision then authorized confining judicial review of compensation awards to appellate courts. (*County of Sonoma, supra*, 40 Cal.3d at pp. 369–370 [discussing *Loustalot v. Superior Court* (1947) 30 Cal.2d 905, 912–913].)

section 170.6 does not violate the separation of powers doctrine. (*Id.* at pp. 191–192.) In reaching this conclusion, the Court reiterated that " 'the constitutional jurisdiction and powers of the superior court [as defined in article VI of the Constitution] can in nowise be trenched upon, lessened or limited by the legislature,' " although " ' "the procedure by which the jurisdiction of said courts is to be exercised may be prescribed by the legislature." ' " (*Id.* at pp. 191–192.) *Solberg* then applied a rule that harmonizes these principles: " ' "statutory regulation [of the courts' jurisdiction] will be upheld unless such regulations should be found to substantially impair the constitutional powers of the courts or practically defeat their exercise." ' " (*Id.* at p. 192.)

The Energy Commission posits that section 25531(a) is constitutional under *Solberg* because it is a reasonable means of streamlining judicial review of Energy Commission decisions to avoid duplication of effort. These policy considerations are not controlling.[7] Section 25531(a) cannot reasonably be characterized as prescribing a procedure by which courts exercise their constitutional powers; it instead bars entirely superior courts and courts of appeal from exercising their Article VI jurisdiction over these

---

[7] Nor is section 25531(a) the only way the Legislature can streamline judicial review of Energy Commission siting decisions. The Legislature that adopted the Warren-Alquist Act had reservations about the constitutionality of the original section 25531(a) (see George H. Murphy, Legislative Counsel, Cal. Office of Legislative Counsel, letter to Governor Ronald Reagan, Report on Enrolled Bill A.B. 1575 (May 20,1974), p. 2 ["since the [Energy Commission] created by this bill would not be a constitutional agency, as is the [PUC], we do not think the courts can be thus limited in their review"]), so the statute has from the start included a savings clause. Public Resources Code section 25903 provides that, if section 25531(a) is struck down, Energy Commission siting decisions shall receive priority review from the superior court and preference in corresponding appellate proceedings—one alternative mechanism for accelerating judicial review.

mandate petitions. In the language of *Solberg*, section 25531(a) both substantially impairs and practically defeats the constitutional powers of these courts, and it is for that reason unconstitutional. (See *Solberg, supra*, 19 Cal.3d at p. 192.)

The Energy Commission also relies on *Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 (*Tex-Cal*), which arose out of a ruling by the Agricultural Labor Relations Board (ALRB) that an employer was guilty of unfair labor practices. Pursuant to Labor Code section 1160.8, the employer sought review of this ruling in the court of appeal. The appellate court, applying a statutory standard that required it to accept the ALRB's findings of fact if supported by substantial evidence, affirmed the ALRB's ruling with modifications. The Supreme Court granted review to address questions regarding "section 1160.8's construction, constitutionality, and proper application." (*Id.* at p. 341.)

The Supreme Court in *Tex-Cal* rejected a claim that Labor Code section 1160.8 is unconstitutional because it confers jurisdiction on the court of appeal "beyond that conferred or authorized" by Article VI, sections 10 and 11. (*Tex-Cal, supra*, 24 Cal.3d at p. 347.) Of concern was a provision in the statute that gives the court of appeal jurisdiction to "enter a decree enforcing, modifying . . . , or setting aside in whole or in part, the order of the [ALRB]" (Lab. Code, § 1160.8)— judicial functions that the *Tex-Cal* Court found "do not readily fit the molds of either original jurisdiction to grant extraordinary relief or appellate jurisdiction." (*Tex-Cal*, at p. 347.) Ultimately, the Court concluded these judicial functions are within the court of appeal's original jurisdiction to adjudicate a petition for writ of mandate. (*Id.* at pp. 350–352.) In reaching this conclusion, the Court acknowledged that agency decisions are usually reviewed by mandate proceedings in the superior courts, but it

21

emphasized that the constitution also confers extraordinary writ jurisdiction on courts of appeal and the Supreme Court. "[A] mandate proceeding initiated in an appellate court is a constitutionally permitted vehicle for reviewing an administrative determination." (*Id.* at p. 350.)

The Energy Commission contends that section 25531(a) is constitutional under *Tex-Cal* because of precisely this conclusion—that "a mandate proceeding initiated in an appellate court is . . . constitutionally permitted." (*Tex-Cal, supra,* 24 Cal.3d at p. 350.) But Plaintiffs do not challenge whether a mandate proceeding *may* be initiated in an appellate court, only whether section 25531(a) may require that it *must* be initiated there. *Tex-Cal* did not hold that the Legislature has authority to bar superior courts from exercising their extraordinary writ jurisdiction. It held that the court of appeal's original jurisdiction over mandate proceedings includes the power to perform judicial functions assigned it in Labor Code section 1660.8. The Court did not address whether section 1660.8 bars other courts from exercising those same functions, nor did it consider whether such a bar would be constitutional. In other words, *Tex-Cal* addressed a fundamentally different issue from the one we face here.[8]

By contrast, we do find useful guidance in *Gerawan Farming, supra,* 247 Cal.App.4th 284, which involved a decision by the ALRB excluding members of the public from attending a mandatory mediation and conciliation proceeding conducted to resolve a collective bargaining dispute. In a declaratory relief action challenging the constitutionality of this exclusion order, the superior court initially concluded it lacked jurisdiction to

---

[8] We deny, for lack of relevancy, the Energy Commission's request for judicial notice of a legal brief the Energy Commission filed in a prior proceeding in which it argued that section 25531(a) is valid under *Tex-Cal*.

review the ruling because Labor Code section 1164.9 limits judicial review to the court of appeal and the Supreme Court. (*Id*. at pp. 288–289.) Reversing the judgment on appeal, the *Gerawan Farming* court held that Labor Code section 1164.9 is unconstitutional because its "absolute preclusion of superior court jurisdiction, even in exceptional circumstances . . . impermissibly divested the superior court of its original jurisdiction." (*Id*. at p. 289.) *Gerawan Farming* distinguished *Tex-Cal* on the same ground we do—that the issue in *Tex-Cal* was not whether a "statute may divest the superior court of original jurisdiction," but whether the challenged statute "violated the grant of original jurisdiction to appellate courts by impermissibly expanding on that jurisdiction." (*Gerawan Farming*, *supra*, 247 Cal.App.4th at pp. 303–306.)

Furthermore, *Gerawan Farming* distinguished Labor Code section 1160.8, the statute at issue in *Tex-Cal*, precisely because that provision does not bar "all recourse to the superior court." (*Gerawan Farming, supra,* 247 Cal.App.4th at p. 305.) Section 1160.8 has been construed to permit superior court review of an ALRB decision in an unfair labor practices proceeding "in exceptional circumstances where the prescribed judicial review process was unavailable or patently inadequate and a significant statutory or constitutional violation was asserted that warranted such redress." (*Gerawan Farming,* at p. 305.) In contrast, Labor Code section 1164.9, the statute at issue in *Gerawan Farming*, "seeks to altogether divest the superior court of jurisdiction over the matters described therein," thus raising a materially different constitutional issue. (*Gerawan Farming*, at p. 307.)

The statute we review in the present case is analogous to the Labor Code provision struck down in *Gerawan Farming* in that section 25331 imposes a statutory bar that divests superior courts and courts of appeal from

23

ever reviewing Energy Commission siting decisions. In this way, too, *Gerawan Farming* supports the conclusion that our case is not governed by *Tex-Cal*.

In its reliance on *Solberg* and *Tex-Cal*, the Energy Commission overlooks the most relevant Supreme Court precedent since 1966. In *Matosantos*, the Court was asked to determine the validity of a statute winding down the state's redevelopment agencies, a statute that required " 'any action' " challenging its validity to " 'be brought in the Superior Court of the County of Sacramento.' " (*Matosantos, supra*, 53 Cal.4th at p. 252.) When a litigant nonetheless filed directly in our Supreme Court a petition for writ of mandate urging the invalidity of the statute, the Court did not allow the statutory language to prevent it from reaching the merits. (*Ibid.*) Citing century-old caselaw establishing that its original jurisdiction over a petition for writ of mandate "is constitutional" and "may not be diminished by statute," the Supreme Court construed the pertinent provision narrowly to avoid this constitutional pitfall. (*Ibid.*, citing *Chinn v. Superior Court*, *supra*, 156 Cal. at p. 480.) The Court read the statute "as applying only to, and designating a forum for, 'action[s],' . . . while having no bearing on jurisdiction over 'special proceedings' such as petitions for writs of mandate," over which the Supreme Court has original jurisdiction. (*Matosantos*, at p. 253.)

The Court effectively embraced in *Matosantos* the legal principle that the Energy Commission dismisses as dictum in *Eshleman* and as obsolete after the constitutional amendments of 1966. *Matosantos* establishes the continuing vitality of the *Eshleman* rule. Applying it here, we conclude that for section 25531(a) to be valid, some other provision of the Constitution must authorize the Legislature to abridge the original jurisdiction of the superior

24

courts and the courts of appeal in writ of mandate cases involving Energy Commission siting decisions.

## C. Article XII No Longer Authorizes Section 25531(a)

The Energy Commission argues, in the alternative, that Article XII, section 5 provides constitutional authority for section 25531(a). Article XII vests the PUC with power to regulate public utilities under the auspices of the California Legislature. Article XII, section 5 states that "[t]he Legislature has *plenary power, unlimited by other provisions of this constitution* but consistent with this article, to confer additional authority and jurisdiction upon the [PUC], *to establish the manner and scope of review of [PUC] action in a court of record*, and to enable it to fix just compensation for utility property taken by eminent domain." (Italics added.)

Courts have long recognized that the Legislature's plenary constitutional authority over PUC matters includes the power to restrict judicial review of PUC decisions. (See e.g. *Eshleman*, *supra*, 166 Cal. at p. 689; *Southern Calif. Edison Co. v. Railroad Com.* (1936) 6 Cal.2d 737, 748.) Citing *County of Sonoma*, *supra*, 40 Cal.3d 361, the Energy Commission contends that the Legislature's Article XII power implicitly extends to Energy Commission siting decisions as well.

In *County of Sonoma,* the petitioner filed a mandate proceeding in the Supreme Court to challenge an Energy Commission siting decision. (*County of Sonoma, supra*, 40 Cal.3d at p. 366.) However, the petitioner prayed in the alternative for the Court to decide whether former section 25531 was constitutional, and it was on this ground that the case was decided. At the time, former section 25531(a) made Energy Commission siting decisions subject to judicial review "in the same manner as the decisions of the" PUC on a need certificate "for the same site and related facility." (See *County of*

25

*Sonoma,* at p. 366, fn. 6.)  Because these PUC decisions were reviewable only by the Supreme Court (*id*. at p. 366; former Pub. Util. Code, §§ 1756–1759), former section 25531(a) effectively limited review of such Energy Commission siting decisions to the Supreme Court as well.

*County of Sonoma* upheld this constraint as "a proper exercise of the Legislature's broad powers over PUC matters conferred by article XII." (*County of Sonoma, supra,* 40 Cal.3d at p. 368.)  The Court started from the baseline that the Legislature had for decades sought to expedite review of PUC decisions by making them reviewable only in the Supreme Court, and then explained how section 25531 accomplished this same objective.  "Section 25531 was carefully tailored to apply only to Energy Commission action on certifications that are prerequisite to issuance of" a PUC need certificate; and by expediting these prerequisite decisions, section 25531 "expedite[d] the state's ultimate authorization of electric generating plants through not only the Energy Commission but also the PUC itself."  (*Id*. at pp. 370–371.)  Were it not for former section 25531, "PUC authorization of such a project might be substantially delayed until judicial proceedings to review the Energy Commission's certification of the project were completed not only in [the] superior court but in the Court of Appeal and [the Supreme Court] as well" (*id*. at p. 368) because an Energy Commission siting certificate had to precede a PUC need certificate (Pub. Resources Code, § 25518; Pub. Util. Code §1002, subd (b)).  It was this "close relationship between the functions of the PUC and the narrow class of Energy Commission decisions affected by section 25531" that brought the challenged "judicial review provisions within the broad legislative authority over PUC matters conferred by article XII."  (*Id*. at p. 367.)

The Energy Commission argues that the current version of section 25531 "simply uses more direct language to do precisely the same thing that the original section 25531 did," so the provision must pass constitutional muster for the reasons given in *County of Sonoma*. The Energy Commission is mistaken in two significant respects.

First, the original section 25531(a) explicitly equated the review afforded Energy Commission decisions with the review afforded PUC decisions on need certificates—review was to be "in the same manner as" these PUC decisions. By contrast, the current section 25531(a) makes no reference to PUC decisionmaking *and* constrains judicial review more sharply than does the equivalent statute now governing review of PUC decisions. In the 1990's, the Legislature expanded judicial review of PUC decisions by amending Public Utilities Code section 1756 to authorize original jurisdiction in the court of appeal as well as the Supreme Court. (See Stats. 1996, ch. 855, §§ 1, 5; Stats. 1998, ch. 886, § 10.) A few years later, when amending section 22531(a) to its current form, the Legislature decided Energy Commission siting decisions no longer should be reviewed in the same way as PUC decisions. Instead, section 25531 now provides that Energy Commission decisions "on any application for certification of a site and related facility are subject to judicial review by the Supreme Court of California" (§ 25531(a)), and by the Supreme Court alone (§ 25531, subd. (c)), while PUC decisions remain reviewable at the court of appeal and the Supreme Court. As Plaintiffs point out in their appellate brief, this means PUC decisions involving power plant approvals are today "subject to more robust and meaningful judicial review than [Energy] Commission siting decisions for the same power plants."

The second important difference in the amended version of section 25531(a) is that the provision now applies to *all* Energy Commission site certificates, not just those where an electrical utility will also apply for a PUC need certificate. The "narrow class of Energy Commission decisions" previously governed by section 25531(a) was the class of site certificates for which the PUC would also receive an " 'application for a [need certificate] for the same site and related facility.' " (*County of Sonoma*, *supra*, 40 Cal.3d at pp. 366–367 & fn. 6.) It was precisely because, for these power plants, the site certificate was "prerequisite to" the PUC's issuance of a need certificate, that the Supreme Court concluded former section 25531 expedited "authorization of electric generating plants through . . . the PUC itself," and on that basis survived constitutional attack. (*Id.* at pp. 370–371.) By contrast, today section 25531(a) constrains judicial review of Energy Commission decisions "on *any* application for certification of a site and related facility." (Italics added.) The provision is no longer "carefully tailored to apply only to" those Energy Commission decisions on which PUC licensing depends. (*County of Sonoma*, at p. 370.)

The significance of this second change looms large when one considers broader changes in the process by which the PUC regulates the energy industry that have occurred since *County of Sonoma*. "[I]n the early 1990's California began a process of restructuring electricity service by introducing competition in the generation of electricity, with the ultimate objective of achieving lower rates for consumers." (*Independent Energy Producers Assn. v. McPherson*, *supra*, 38 Cal.4th at pp. 1025–1026.) A key component of this restructuring process was a "deregulation plan" adopted by the Legislature in 1996, which was designed to facilitate private ownership and operation of powerplants. (*Id.* at p. 1026.) Among other things, the plan required

28

investor-owned utilities to sell their powerplants to independent generators. (*Ibid.*)  In addition, the Legislature amended the Public Utilities Code to exclude independent generators from the definition of a public utility, freeing them from the requirement of having to obtain a PUC need certificate in order to construct a powerplant.  (Pub. Util. Code, § 216, subd (h), added by Stats. 1996, ch. 854, § 9.)  As a result of these changes, most new thermal power plants are now constructed and operated by independent power producers who, although they still need a site certificate from the Energy Commission, no longer require a need certificate from the PUC.  If section 25531(a) today applied only to those Energy Commission site certificates that were a statutory prerequisite to a PUC need certificate for the same facility, the provision would apply in vanishingly few cases.  The record reports that no more than three site certificates, out of 61 the Energy Commission has issued since 2001, went to investor-owned utilities who would be required also to obtain a PUC need certificate.

The Energy Commission concedes that an independent power producer is not required to obtain a PUC need certificate to build a powerplant, but argues the PUC effectively regulates these power producers through its review and approval of "power purchase agreements."  These contracts, whereby a public utility agrees to purchase power at a stated price often for a period of years, are usually the only realistic means of obtaining financing for construction of a powerplant.  But no law requires a powerplant developer to obtain a power purchase agreement, nor must the PUC's review of a power purchase agreement await a decision from the Energy Commission on the siting certificate.  Indeed, the record contains evidence of PUC decisions approving power purchase agreements *before* the Energy Commission had

completed its siting review for the same powerplant or, in other cases, many years thereafter.

The Energy Commission also points out that some independent producers require a need certificate for new transmission lines to connect their new power plants to the electrical grid, but this applies to only a small fraction of new powerplants since 2001.

Numbers aside, the issue in this appeal is not whether the PUC has regulatory influence over private parties constructing powerplants in this state. The issue is whether section 25531 is a proper exercise of the Legislature's Article XII power to regulate the PUC. The text of Article XII suggests this constitutional provision does not authorize the Legislature to constrain judicial review of Energy Commission decisions. The plenary power that Article XII, section 5 gives the Legislature is "to establish the manner and scope of review of [PUC] action in a court of record," with no mention that this power extends to decisions of other state agencies. (Art. XII, § 5.) In *County of Sonoma* the Supreme Court inferred a narrow extension of the Legislature's Article XII, section 5 power. Because section 25531 then applied only to Energy Commission citing certificates that were a statutory prerequisite for obtaining PUC approval of the same project, the Court held that Article XII justified expedited judicial review of both certificates for those projects. (*County of Sonoma*, *supra*, 40 Cal.3d at pp. 370–371.) But because Energy Commission siting decisions are no longer an integral component of the PUC's regulatory scheme for new powerplants, except in the rare circumstance of an application for a new powerplant from an investor-owned utility, and because section 25531 has been expanded to apply to site certificates for *all* new powerplants, not just those for which a PUC need certificate is also required, Article XII is no longer "carefully

30

tailored" to "implementing and facilitating the PUC's licensing of thermoelectric power facilities." (*County of Sonoma*, at pp. 370–371.) Thus, Article XII no longer justifies expediting—and limiting—judicial review of Energy Commission siting decisions. The Legislature has formally severed the statutory link between PUC action and Energy Commission siting decisions.

The Energy Commission argues that section 25531(a) is constitutional because the current provision remains " 'cognate and germane' " to the PUC's regulatory functions. The Energy Commission mischaracterizes this test for functional relatedness as "the rule set forth in *County of Sonoma*." The phrase does appear once in *County of Sonoma*, in an extended block quote taken from a case called *Pickens v. Johnson* (1954) 42 Cal.2d 399, which uses the phrase to describe the holding of *Eshleman*. (*County of Sonoma*, *supra*, 40 Cal.3d. at p. 369.) But *Pickens* is a case that examines whether the constitution authorizes the retired judges program; *Pickens* does not address the original jurisdiction of the courts, nor purport to establish a standard for determining under what circumstances the Legislature's plenary power over one state agency gives it plenary power over a different agency.

*Eshleman*, when it speaks of "cognate and germane," does so for an entirely different purpose—to explain that the Constitution authorizes the Legislature "to confer additional and different powers upon" the Railroad Commission, provided such powers are "cognate and germane to the subject of public utilities." (*Eshleman, supra*, 166 Cal. at p. 689; see also *id*. at p. 656 ["legislature may confer upon the railroad commission . . . whatsoever authority it may see fit" in contexts that "are cognate and germane to . . . the constitutional powers conferred"].) "[C]ognate and germane" (*ibid*.) is, in

31

short, a limiting principle that bounds the Legislature's "plenary power . . . to confer additional authority and jurisdiction upon" the PUC. (Art. XII, § 5.)

*Eshleman*'s usage of "cognate and germane" is consistent with courts' use of the phrase in other cases. (See *Morel v. Railroad Com. Of California* (1938) 11 Cal.2d 488, 491–492 [additional powers conferred on Railroad Commission]; *Tomra Pacific, Inc. v. Chiang* (2011) 199 Cal.App.4th 463, 483 [single subject rule for legislation].) This usage has nothing to do with the issues before us. Our case is not about whether the Legislature can enlarge the jurisdiction of the PUC by giving the PUC additional authority. It is about whether the Legislature can exempt from full judicial review decisions of the Energy Commission, even though the Constitution creates and gives the Legislature plenary power over the PUC and not the Energy Commission.

We think the Energy Commission's attempt to substitute a more flexible "cognate and germane" standard for the rigorous approach the *County of Sonoma* Court actually took when analyzing the constitutionality of former section 25531 is particularly inappropriate to the issue before us. It has long been established that the jurisdiction Article VI vests in our courts " 'may not lightly be deemed to have been destroyed.' " (*Matosantos, supra*, 53 Cal.4th at p. 253.) We do not read Article XII, section 5 as authorizing any such destruction with regard to original jurisdiction to review Energy Commission decisions on site certificates, now that section 25531(a) is no longer "carefully tailored to apply only to . . . certifications that are prerequisite to issuance of" a PUC need certificate. (*County of Sonoma, supra*, 40 Cal.3d at p. 370.)

Finally, the Energy Commission contends that this facial challenge to the constitutionality of section 25531(a) must be rejected because Plaintiffs failed to produce evidence to show that the Energy Commission has actually

32

made a siting decision with respect to a powerplant that is not closely connected to the functions of the PUC.  The Energy Commission's authority for this argument is *Coffman Specialties, Inc. v. Department of Transportation* (2009) 176 Cal.App.4th 1135, 1144–1145 (*Coffman Specialties*).  That case states:  " 'In evaluating a facial challenge, a court considers 'only the text of the measure itself, not its application to the particular circumstances of an individual.' " (*Ibid.*)  By bringing a facial challenge, Plaintiffs were thus not required to ground their constitutional challenge in an actual siting decision by the Energy Commission.

*Coffman Specialties* also confirms the principle that a plaintiff cannot establish that a statute is unconstitutional on its face by ' " 'suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute." ' " (*Coffman Specialties, supra*, 176 Cal.App.4th at p. 1145.)  In other words, the constitutional problem must be manifest, which it is here, as explained above and in our prior decision reversing the first judgment in this case.  (*Communities I, supra*, 19 Cal.App.5th at pp. 738–740.)

In summary, the trial court did not err by entertaining Plaintiffs' facial challenge, nor by finding that section 25531(a) divests the superior courts and courts of appeal of original jurisdiction that Article VI, section 10 confers on them.  This impingement is not authorized by Article XII, and the Energy Commission identifies no other provision of the Constitution that expressly or impliedly confers power on the Legislature to divest these courts of their original jurisdiction.  Section 25531(a) is, accordingly, unconstitutional.

## II. Section 25531(b) Violates the Judicial Powers Clause

The Energy Commission also challenges the trial court's separate finding that section 25531(b) is unconstitutional because it confers judicial power on an administrative agency.

Section 25531(b) purports to limit the judiciary's power to review Energy Commission fact-finding. The statute provides that judicial review of Energy Commission siting decisions "shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates" the petitioner's constitutional rights. Further, "[t]he findings and conclusions of the commission on questions of fact are final and are not subject to review, except as provided in this article." (§ 25531(b).)

The Energy Commission may not itself exercise judicial power. Article VI, section 1 vests "[t]he judicial power of this State . . . in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." Notwithstanding this broad grant, the Constitution also creates and empowers some administrative agencies, such as the PUC, to exercise judicial authority. (*McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 355 (*McHugh*).) However, "agencies not vested by the Constitution with judicial powers may not exercise such powers." (*Id.* at p. 356.) Indisputably, the Energy Commission was not created by the Constitution nor vested with judicial powers.

Our Supreme Court has established guidelines for evaluating whether an adjudicative administrative action violates the judicial powers clause. Of importance here, an "agency may constitutionally hold hearings, determine facts, apply the law to those facts, and order relief" only if "the 'essential' judicial power (i.e., the power to make enforceable, binding judgments)

34

remains ultimately in the courts, through review of agency determinations." (*McHugh, supra,* 49 Cal.3d at p. 372, italics omitted.)

Applying this guideline, we affirm the trial court's finding that section 23531(b) is an unconstitutional seizure of judicial power. In conducting their essential judicial review function, courts review agency findings under either the substantial evidence or independent judgment standard, depending on the gravity of the right at issue. (*Inzana v. Turlock Irrigation Dist. Bd. of Directors* (2019) 35 Cal.App.5th 429, 440; *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32.) Section 25531(b) purports to eschew either standard by mandating that Energy Commission "findings and conclusions . . . on questions of fact are final and are not subject to review."

The Energy Commission makes two related attempts to avoid this result. First, it contends that there is no controversy between the parties to resolve because the Energy Commission *agrees* with Plaintiffs that judicial review of its decisions on siting certificates should include review of factual findings for substantial evidence. According to this argument, the Energy Commission is entitled to summary judgment on the cause of action challenging the constitutionality of section 22531(b) because it produced undisputed evidence showing that it has taken the view in previous mandate cases that its siting decisions are subject to substantial evidence review. But the commission's evidence does not support its argument. The evidence establishes only that the Energy Commission has submitted briefs in which, "[f]or purposes of this Opposition" it "assumes that the Court's inquiry . . . [includes] substantial evidence review." Such an *assumption* may have narrowed the issues in dispute in a particular prior case, but it does not moot the controversy over the constitutionality of section 25531(b). Certainly, the

35

Energy Commission has never agreed with Plaintiffs that section 25531(b) is unconstitutional.

Second, the Energy Commission argues, citing the canon of constitutional avoidance, that we can and should interpret section 25531(b) to require substantial evidence review. "The canon of constitutional avoidance is a tool of statutory interpretation that permits us to select between competing plausible interpretations of statutory text. It does not permit us to ' " 'do[] violence to the reasonable meaning of the language used.' " ' " (*People v. Garcia* (2017) 2 Cal.5th 792, 815.) Here, section 25531(b) contains no language that reasonably can be interpreted as subjecting Energy Commission findings to substantial evidence review. (Compare *In re Kay* (1970) 1 Cal.3d 930, 942.) Indeed, section 25531(b) expressly states, "findings and conclusions of the commission on questions of fact . . . are not subject to review, except as provided in this article." There are no "articles" in Chapter 6 of Division 15 of the Public Resources Code, and the commission cites only one possible exception to this statutory prohibition on subjecting factual findings to judicial review. The commission draws our attention to section 25531(b)'s language permitting courts to inquire whether the Energy Commission " 'has regularly pursued its authority.' "

We disagree with the Energy Commission that an inquiry into whether the commission "has regularly pursued its authority" entitles courts to review the commission's factual determinations for substantial evidence. The commission contends that section 25531(b) was modeled on a former version of Public Utilities Code section 1757 containing the same language, which the commission argues has been interpreted by our Supreme Court to authorize substantial evidence review of PUC findings. (Citing *Southern Pacific Co. v.*

36

*Public Utilities Com.* (1953) 41 Cal.2d 354, 362 (*Southern Pacific*).) The Energy Commission misreads *Southern Pacific.*

*Southern Pacific, supra,* 41 Cal.2d. 354 first discusses the predecessor to section 1757 of the Public Utilities Act as it existed in 1930, when the pertinent statutory language was identical to the language of section 25531(b). As to this provision the Court explained, "the findings and conclusions of the commission on questions of fact are made final and not subject to review. . . , and *neither the sufficiency of the evidence, nor the soundness of the reasoning, upon which that finding was based, can be considered* on" ' " review. (*Id.* at p. 360, italics added.)

*Southern Pacific* then discusses section 1757 of the Public Utilities Act as it resulted from 1933 amendments designed to better address judicial review for constitutional claims. The language of the amended statute retained strong similarity to the language later used in section 25531(b), and it continued to exempt PUC factual findings for non-constitutional claims from review for substantial evidence. (*Southern Pacific, supra,* 41 Cal.2d at p. 362.) To the extent the point remains obscure in *Southern Pacific,* it emerges with clarity in *Camp Meeker Water System, Inc. v. Public Utilities Com.* (1990) 51 Cal.3d 845, which, discussing *Southern Pacific* and section 1757, concludes: "The question is not whether the evidence is sufficient under traditional criteria for appellate review." (*Camp Meeker,* at p. 863.) Instead, the " 'determination whether the commission has regularly pursued its authority' " requires the court to review for *any* evidence to support the commission's findings, a more deferential standard. (*Id.* at pp. 863–864; see also *Yucaipa Water Co. v. Public Utilities Com.* (1960) 54 Cal.2d 823, 828 [" ' "The rule, of course, is that if there was any evidence before the [PUC] that would justify its finding, its order cannot be annulled" ' "].) Because the

37

Constitution endows the PUC with certain judicial authority, the "any evidence" standard was acceptable for judicial review of PUC decisions (see *Southern Pacific*, *supra*, 41 Cal.2d at pp. 359–360), but the Legislature later opted to amend the Public Utilities Code to require substantial evidence review. (Pub. Util. Code, § 1757, subd. (a)(4).)

As we have seen, no constitutional provision vests the Energy Commission with judicial authority comparable to the PUC's, and section 25531(b) has not been amended to provide for substantial evidence review of Energy Commission factual findings. In light of the caselaw construing the statute on which section 25531(b) was modeled, we therefore agree with the trial court that section 25531(b) is not susceptible to an interpretation that would render it constitutional.

## DISPOSITION

The judgment is affirmed. Respondents are to pay costs on appeal. (Cal. Rules of Court, rule 8.278.)

TUCHER, J.

WE CONCUR:

STREETER, Acting P. J.
BROWN, J.

*Communities for a Better Environment et al. v. Energy Resources Conservation and Development Commission* (A156017)

Trial Court:  Alameda County Superior Court

Trial Judge:  Hon. Stephen Kaus

Counsel:  California Energy Resources Conservation and Development Commission, Darcie L. Houck, Chief Counsel, William M. Chamberlain, Chief Counsel, retired; Xavier Becerra, Attorney General; Robert W. Byrne, Senior Assistant Attorney General; Myung J. Park, Supervising Deputy Attorney General; Bryant Cannon, Marc. N. Melnick, Deputy Attorneys General for Defendant and Appellant

Ellison Schneider Harris & Donlan LLP, Christopher T. Ellison for Ellison Schneider Harris & Donlan LLP and Independent Energy Producers Association as Amici Curiae on behalf of Defendant and Appellant

California Independent System Operator Corp., Roger E. Collanton, William H. Weaver for California Independent System Operator Corporation as Amici Curiae on behalf of Defendant and Appellant

EarthJustice, Stacey P. Geis, Gregory D. Muren; Communities for a Better Environment, Shana Lazerow for Plaintiffs and Respondents

*Communities for a Better Environment et al. v. Energy Resources Conservation and Development Commission* (A156017)